UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff-Respondent,<br><br>v.<br><br>GREGORY FRANK SPEROW,<br><br>              Defendant-Movant. | Case No. 1:12-cv-00158-BLW<br>      1:06-cr-00126-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Gregory Frank Sperow's Motion to Vacate/Set Aside/Correct Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Dkt. 1) and (Crim. Dkt. 1207), the Government's Motion to Dismiss (Civ. Dkt. 27), and Sperow's Motion Pursuant to Federal Rules of Civil Procedure, Rule 15(d) (Civ. Dkt. 45). Having reviewed the Motions, Responses, Replies, and the underlying criminal record, the Court enters the following Order denying Sperow's Rule 15(d) Motion, granting the Government's Motion to Dismiss, and dismissing the § 2255 Motion.

## BACKGROUND

The Government has provided a lengthy factual background of this case in its Motion to Dismiss. *See Motion to Dismiss*, Civ. Dkt. 27 at 2-12. Therefore, the Court

**MEMORANDUM DECISION AND ORDER - 1**

will provide only a truncated summary here. The procedural background is somewhat complicated and thus set forth in more detail.

1. **Factual Background**

On June 19, 2006, Sperow was indicted by a federal grand jury in the District of Idaho along with eleven other individuals and charged with drug trafficking, money laundering, and forfeiture. *Indictment*, Crim. Dkt. 1. Sperow and five others were also charged with operating a continuing criminal enterprise from 1975 through June 16, 2006, in over twenty states. *Id*. The 196-page indictment included 98 predicate acts in connection with the criminal enterprise count. *Id*. The enterprise involved primarily marijuana, but also involved methamphetamine, cocaine, and hashish.

During the period of the conspiracy and the continuing criminal enterprise, Sperow was convicted of drug trafficking charges in the districts of New Mexico, Southern California, and Oregon and sentenced to lengthy terms of incarceration in each case. *PSR* ¶¶ 410, 412, and 413. Sperow had been indicted by a federal grand jury in the district of Oregon on February 14, 1996. *PSR* ¶ 416. However, he left Oregon and became a fugitive for approximately eight years until his arrest on May 26, 2004, and subsequent conviction. *PSR* ¶ 418. During his time as a fugitive, he continued his drug trafficking and money laundering activities. As relevant here, Sperow was alleged to have been a source of drugs in the Kent Jones drug trafficking organization and was involved in shipping and distributing drugs throughout the United States and Idaho working with various co-Defendants.

## 2.     Procedural Background

### A.     Pre-Conviction

Sperow was incarcerated on the District of Oregon conviction at the time the Indictment was issued in the District of Idaho on September 13, 2006.  He was not arraigned until January 3, 2007, yet he filed *pro se* documents challenging the Court's jurisdiction prior to that time.  At the arraignment, Attorney Phillip Gordon was appointed as stand-by counsel due to Sperow's refusal to accept his services.  Sperow continued filing *pro se* motions and sought to terminate Attorney Gordon's services even as standby counsel.

A Superseding Indictment was returned against Sperow and fourteen other Defendants on May 23, 2007.  At this point, Sperow agreed to be represented by Attorney Gordon.  From approximately October 24, 2007 through December 7, 2007, nine of the fourteen co-Defendants entered Plea Agreements and one passed away.

On January 9, 2008, a Second Superseding Indictment was returned against Sperow and two of his co-Defendants.  Twelve co-Defendants were not named in the Second Superseding Indictment because they had already agreed to plead guilty, had been dismissed, or otherwise reached agreements with the Government resulting in later dismissal in exchange for pleading guilty in related cases.

From the time the Second Superseding Indictment was filed until he entered into a Plea Agreement, Sperow, through Attorney Gordon, filed various motions, including Motion to Sever (Crim. Dkt. 482) (subsequently withdrawn by Crim. Dkt. 617), Motion

to Dismiss for Speedy Trial Violations (Crim. Dkt. 484), Motion to Dismiss for Vindictive Prosecution (Crim. Dkt. 486), Motion to Dismiss for Preindictment Delay (Crim. Dkt. 489), Motion to Change Venue (Crim. Dkt. 495), Joinder in Certain Motions Filed by Defendant Weitzman (Crim. Dkt. 500), and Notice of Intent to Assert and Rely on Statute of Limitations (Crim. Dkt. 502). The Court denied the various Motions. *See Mem. Dec. and Order*, Crim. Dkt. 616. Sperow's earlier *pro se* Motion for Discovery (Crim. Dkt. 180), Motion for Discovery (Crim. Dkt. 181), and Motion for Order to Show Cause (Crim. Dkt. 132) were deemed moot. *Docket Entry Order*, Crim. Dkt. 658.

On August 28, 2008, shortly after Sperow's counseled motions were denied, he entered into a binding Plea Agreement pursuant to Rule 11(c)(1)(C) containing an agreed upon sentencing range and reserving the right to appeal the denial of his Motion to Dismiss for Speedy Trial Violations and Motion to Dismiss for Pre-Indictment Delay. *Plea Agreement*, Crim. Dkt. 661.

On September 3, 2008, Sperow entered his plea of guilty to conspiracy to distribute/possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count Two); conspiracy to launder money in violation of 18 U.S.C. § 1956(h) (Count Three); drug forfeiture pursuant to 21 U.S.C. § 853(a)(1) and (2) (Count Seven); and money-laundering forfeiture pursuant to 18

U.S.C. § 982(a)(1) (Count Eight).  *Amended Plea Agreement*, Crim. Dkt. 666.[1] Counts

Seven and Eight sought forfeiture of cash proceeds of $16,000,000 and the property

described in Count Six which included thirteen parcels of real property, thirteen bank

accounts, six conveyances including motor vehicles and aircraft, currency, computer and

hard drive, and the property and proceeds thereof of ten businesses.

In exchange for the plea, the Government agreed to the binding nature of the plea

agreement and further agreed to (1) withdraw the Information filed pursuant to 21 U.S.C.

§ 851 (Crim. Dkt. 438) relating to Sperow's prior drug trafficking convictions which

increased the statutory maximum sentence to mandatory life; (2) dismiss Counts One

(Continuing Criminal Enterprise), Four (Conspiracy to Structure Transactions, Launder

Money, and Use Interstate Facilities), Five (Conspiracy to Travel and Transport in Aid of

Racketeering Enterprise), Six (Continuing Criminal Enterprise Forfeiture), Nine (Money

Laundering and Travel and Transport in Aid of Racketeering Forfeiture), and Ten

(Conspiracy to Structure Transactions Forfeiture); (3) a sentencing range of 15.5 to 19.5

years subject to compliance with a cooperation agreement; and (4) recommend that the

sentence run concurrently with his District of Oregon sentence.  *Id*. at 1-2.  The

Government also agreed to certain concessions in the forfeiture portion of the Plea

---

[1] The Plea Agreement was amended by interlineation of the parties the day of the plea hearing to correct an error. For ease of reference, the Court will refer to the Amended Plea Agreement as the "Plea Agreement" except in citations to that document.

Agreement.  *Id.* at 8-11.  In   terms of sentencing and monetary exposure, Sperow was

relieved of the twenty-year to life sentence for the charge in Count One and the five-year

maximum sentences for Counts Four and Five as well as fines of up to $2,000,000 and

$250,000, respectively.  *PSR* ¶ 442.  In addition, he was relieved of the § 851

enhancement which would have otherwise dictated a life sentence on Count Two.  *PSR*

¶ 443.

The sentencing hearing was held on June 17, 2009 and June 25, 2009.  *Minutes*,

Crim. Dkts. 860 and 870 as amended by 873.  The Court imposed a sentence of 181

months incarceration on each of Counts Two and Three to run concurrently after having

started the computation at the high end but within the agreed upon sentencing range in

the Plea Agreement.  *Judgment*, Crim. Dkt. 883.

### B.  Post-Conviction

Sperow unsuccessfully appealed the reserved issues.  *USCA Mem. Dec.*, Crim.

Dkt. 1130.  On January 25, 2010, he filed a *pro se* Notice of Conditional Acceptance for

Value and Return for Value, the Order Allowing Discovery in Criminal Ancillary

Proceeding Upon Proof of Claim (Crim. Dkt. 1037) claiming that he was a "Secured

Party Creditor."  The Court ordered it stricken from the record as an improper pleading

unrelated to any matter before the Court.  *Order*, Crim. Dkt. 1048.  On May 20, 2011, he

filed a *pro se* Notice of Appeal of the Final Order of Forfeiture as to Real Property

Located in Lancaster, California entered on May 9, 2011.  *Notice of Appeal*, Crim. Dkt.

1154.  The Ninth Circuit dismissed the appeal as untimely on November 15, 2011.  *USCA Order*, Crim. Dkt. 1179.

On May 23, 2011, Sperow filed a *pro se* Motion to Stay Final Order of Forfeiture as to Real Property Located in Lancaster, California, Pending Appeal and Pursuant to Rule 32.2(d) of the Federal Rules of Criminal Procedure (Crim. Dkt. 1155).  The Court denied the Motion.  *Order*, Crim. Dkt. 1174.

On March 27, 2012, Sperow timely filed the pending § 2255 Motion alleging sixteen grounds of ineffective assistance of counsel at various stages of the criminal proceeding and one ground of procedural denial of effective assistance of counsel prior to arraignment.  On May 17, 2012, while the Government's response was still pending, Sperow filed a Motion to Amend Movant's Motion to Vacate, Set Aside, or Correct a Sentence (Civ. Dkt. 9) which primarily sought to add a claim of ineffective assistance of counsel at the plea stage.  The Court denied the Motion on the grounds that it did not relate back to the initial claims and was therefore time-barred.  *Mem. Dec. Order*, Civ. Dkt. 11.

On November 9, 2012, the Government filed the pending Motion to Dismiss primarily arguing that Sperow had waived his right to file his § 2255 Motion on the grounds raised and also arguing that each claim was subject to dismissal on the merits. At the time the Government filed the Motion to Dismiss, two of Sperow's motions were still pending.  The Motions have since been resolved as discussed below.

On August 12, 2012, Sperow filed a Motion Pursuant to F.R. Civ. P. Rule 15(d) (Civ. Dkt. 14) in which he sought to supplement his § 2255 Motion based on the then recent Supreme Court decisions of *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), and *Missouri v. Frye*, 132 S. Ct. 1399 (2012). He claimed those decisions were not available to him at the time he submitted his § 2255 Motion and again sought to raise issues pertaining to the plea process. The Court subsequently denied that Motion on the grounds that those decisions could not be used to defeat the one-year statute of limitations provision of 28 U.S.C. § 2255(f)(1). *Mem. Dec. and Order*, Civ. Dkt. 43. The Court also denied Sperow's Motion to Withdraw Petitioner's Motion Under 28 U.S.C. § 2255 and to Resubmit Anew Within 180 Days While Not Being Construed as a Second Successive Motion Under 28 U.S.C. § 2255 (Civ. Dkt. 30) on the grounds that Sperow was again seeking to add new claims beyond the statute of limitations. *Id*.

On June 28, 2013, Sperow filed another Motion Pursuant to Federal Rules of Civil Procedure, Rule 15(d) (Civ. Dkt. 45) which is currently pending and is addressed below.

It is important to note that both the Government and Sperow had made several requests for extensions of time for responding to various pleadings which the Court granted thus resulting in considerable delay in resolving the § 2255 Motion. Sperow eventually responded to the Government's Response and Motion to Dismiss on July 29, 2013. *See* Civ. Dkts. 50 and 51. Those documents were inadvertently and unnecessarily docketed as motions and will be deemed moot as motions but have been considered in

resolving the § 2255 Motion.  Briefing of all issues was completed on September 30,

2013.  *See Sperow's Reply*, Civ. Dkt. 59.

      In the midst of these proceedings, Sperow filed a Notice of Appeal of the Court's

Memorandum Decision and Order (Civ. Dkt. 43) denying his Motion to Withdraw and

Motion to Supplement and of the Court's Memorandum Decision and Order (Civ. Dkt.

44) denying a prior request for unsealing various documents.  *Notice of Appeal*, Civ. Dkt.

46; *Amended Notice of Appeal*, Civ. Dkt. 47.  The Ninth Circuit dismissed his appeals on

the grounds of lack of jurisdiction given that the challenged orders were neither final nor

appealable.  *USCA Order* and *Mandate*, Civ. Dkts. 56 and 60.

      Finally, the Government has stated and Sperow has not denied that despite the

waiver in the Plea Agreement he had filed two petitions for a writ of *habeas corpus*

pursuant to 28 U.S.C. § 2241 in March and June of 2013 in the Central District of

California. *Govt. Resp.* at 2-3. The first challenged the computation of his sentence.  *See*

*Gregory Frank Sperow v. United States of America*, 13-cv-1940-DMG(JCG). The second

challenged the legality of his sentence on several of the same grounds contained in his

pending § 2255 Motion.  *See Gregory Frank Sperow v. Conrad M. Graber*, 13-cv-4244-

DMG(JCG).  The Court has confirmed that both cases have been dismissed without

prejudice either upon the Government's motion to dismiss or Sperow's motion to

withdraw his petition.

## MOTION PURSUANT TO FRCP 15(d)

In this Motion, Sperow moves the Court to allow him to supplement his § 2255 Motion with claims based on two recent Supreme Court decisions in *Peugh v. United States*, 133 S.Ct. 2072 (2013), and *Alleyne v. United States*, 133 S.Ct. 2151 (2013). Sperow more specifically claims based on *Peugh* and *Alleyne* that his constitutional rights were violated because counsel failed to raise the issue that he was sentenced based on an allegedly incorrectly calculated career offender enhancement and uncharged relevant conduct which increased the penalties and based on the Court's "application of the one book rule in violation of the ex post facto clause" and that counsel was ineffective for failing to raise those arguments. The Court shall deny the Motion.

As the Government noted in its response to this current Rule 15(d) motion, this is not the first time Sperow has sought to supplement his initial § 2255 Motion with subsequently decided Supreme Court cases – he previously sought to supplement his § 2255 Motion to assert claims under *Lafler v. Cooper* and *Missouri v. Frye*. *See* Civ. Dkt. 14. The Court denied the Motion both as a Rule 15(d) motion to supplement and as a Rule 15(a) motion to amend. *Mem. Dec. and Order*, Civ. Dkt. 43.

The Court denied the Motion as a Rule 15(d) motion on the grounds that the Rule applies to "new facts bearing on the relationship between the parties, rather than merely changes in the law governing those facts." *Id.* at 3 (citing *United States v. Hicks*, 283 F.3d 381, 385 (D.C. Cir. 2002) (treating prisoner's motion to supplement based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), decided after he filed his § 2255 motion, as

a motion to amend pursuant to Rule 15(a)). In other words, the Rule does not apply to intervening judicial decisions. *Id*. The Court denied the Motion as a Rule 15(a) motion on the grounds that it was an untimely motion to amend to add claims that did not relate back to those in the initial pleading. *Id*. at 4 (citing *Mayle v. Felix*, 545 U.S. 644, 650 (2005)). Here, *Peugh* and *Alleyne* likewise are intervening judicial decisions and, likewise, the claims arising out of those decisions do not relate back to the claims of ineffective assistance of counsel in the initial timely-filed § 2255 Motion.

However, even if *Peugh* and *Alleyne* were properly and timely raised, this claim would fail.

## A. *Peugh*

*Peugh* held that sentencing a defendant under the United States Sentencing Guidelines in effect at the time of sentencing that results in a greater sentence than would have resulted under guidelines in effect at the time of the offense violates the Ex Post Facto Clause even with the guidelines being advisory. *Peugh*, 133 S.Ct. at 2088 (reversing and remanding for application of fraud guidelines in effect at the time of the offense rather than those in effect at the time of sentencing).

When Sperow indicated in a previous filing that he wanted to pursue claims under *Peugh*, the Court determined that *Peugh* was inapplicable. *Mem. Dec. and Order* at 11-12, Civ. Dkt. 43. The erroneous premise of Sperow's argument is that the date of the *beginning* of the conspiracy dictates the version of the guidelines to be used. *Peugh* does not stand for that proposition. To the contrary, as the Court advised Sperow in its earlier

decision, the *last date* of an offense determines which version of the guidelines applies. *Id*. at 12.  *See United States v. Fan Xu*, 706 F.3d 965 (9th Cir. 2013).  *See also* USSG § 1B1.11, comment. (n.2) ("the last date of the offense of conviction is the controlling date for *ex post facto* purposes").  Sperow's claim also fails because courts addressing the issue since *Peugh* was decided have determined that *Peugh* does not apply retroactively to cases such as this that are on collateral review.  *See, e.g.*, *Hawkins v. United States*, 724 F.3d 915, 916-17 (7th Cir. 2013); *Spencer v. United States*, 773 F.3d 1132, 1144 (11th Cir. 2014); *Herrera v. Warden, FCC Coleman-USP I*, ___ Fed. Appx. ___, 2015 WL 77404 at 3 (11th Cir. Jan. 7, 2015).

**B.    *Alleyne***

*Alleyne* held that any fact that increases the mandatory minimum sentence for a crime is an element of the crime and not a sentencing factor and thus must be submitted to a jury.  *Alleyne*, 133 S.Ct. at 2155.

Sperow's claim based on *Alleyne*, even if it were otherwise applicable, would be subject to dismissal.  The Ninth Circuit, along with several other Circuits, has decided that *Alleyne*, an extension of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), was not a watershed rule of criminal procedure and that the Supreme Court has not made it retroactive to cases on collateral review.  *See Hughes v. United States*, 770 F.3d 814, 815, 818-19 (9th Cir. 2014).  However, even if it were retroactive, the claim would be subject to dismissal because application of the career offender enhancement (discussed below) based on his prior convictions did not increase the mandatory minimum of ten years

applicable to his drug conspiracy charge.  Rather, it merely increased the guideline range which was then considered by the Court in deciding whether to accept the binding Plea Agreement.

## § 2255 MOTION

## STANDARD OF LAW

### 1.     28 U.S.C. § 2255

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  "Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'"  *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (citation omitted).

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then determines under Rule 8 whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

**2.      Ineffective Assistance of Counsel**

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U. S. 668 (1984).  Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel.  *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S.

at 688. Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id*. at 689. This is so because for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence. . . ." *Id.* For the court, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (discussing *Strickland*).

In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The *Strickland* standard is "highly demanding." *Kimmelman v. Morrision,* 477 U.S. 365, 381-82; 386 (noting that the court should "assess counsel's overall performance throughout the case" when evaluating whether his assistance was reasonable).

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687).

Whether or not counsel's performance was deficient is irrelevant if there was no prejudice as both of *Strickland*'s prongs must be met to be entitled to relief. In evaluating an ineffective assistance of counsel claim, a court may consider the performance and prejudice components of the *Strickland* test in either order. *Strickland*, 466 U.S. at 697.

As recently reiterated by the Supreme Court, a defendant's right to effective assistance of counsel has long been held to apply to the plea process. *See Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012); *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same *Strickland* standard applies to claims of ineffective assistance of counsel at the plea stage. *Hill*, 474 U.S. at 58.

## DISCUSSION

Sperow initially sought to have the Judgment vacated or set aside and his sentence vacated based on sixteen grounds of ineffective assistance of counsel and one ground of denial of pre-arraignment counsel. *§ 2255 Motion* at 14. Only after the Government filed its Motion to Dismiss based on waiver did he raise the issue that his plea was involuntary and that the Government or the Court breached the Plea Agreement. He claims in his Response that his plea was not knowingly and voluntarily made because he would not have pleaded guilty had he known that the career offender guideline would not apply to him and that the Government breached the Plea Agreement by proceeding with forfeiture of two specific properties. This appears to be the latest effort to raise issues regarding the plea and ineffective assistance of counsel pertaining to the plea that the Court has consistently held to be time barred.

The Supreme Court has recognized that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks" of a plea. *Premo v. Moore*, 131 S.Ct. 733,

741 (2011).  Not only is the decision to enter a plea a difficult decision, a decision to seek withdrawal of a favorable plea agreement after sentencing is difficult as well.  To collaterally challenge a guilty plea and request that it be set aside involves assuming considerable risk given that a successful challenge will result in the loss of any benefits provided by the plea bargain (such as dismissal of a more serious charge) and "may result in a less favorable outcome."  *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010).  However, as the Government notes, Sperow appears to want to retain the benefits of the Plea Agreement and improve on them.

Although the guideline calculation informed the Court's decision as to whether or not to accept the binding Plea Agreement, it is important to note that Sperow's sentence was based on the agreed upon range in the Rule 11(c)(1)(C) Plea Agreement and not under the sentencing guidelines.  Because some awareness of his exposure under the guidelines may have informed Sperow's decision to plead guilty, a discussion of the guideline calculation is necessary.  It is also noteworthy that in the absence of the Government's agreement to withdraw the § 851 Information, Sperow would have received a mandatory life sentence if convicted.  Even with the enhancement withdrawn, if Sperow had been sentenced under the guidelines, he would have faced a sentencing range of 360 to life absent any downward departures.

**1.     Waiver**

A defendant may waive his statutory right to file a § 2255 motion challenging his sentence.  *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.), *cert. denied*, 508 U.S.

979 (1993). However, a plea agreement must expressly state that the right to bring a § 2255 motion is waived in order for the waiver to be valid. *United States v. Pruitt*, 32 F.3d 431 (9th Cir. 1994) (finding that language in plea agreement that "he will not appeal whatever sentence is imposed by the court" did not constitute a waiver of the right to bring a § 2255 motion). "The sole test of a waiver's validity is whether it was made knowingly and voluntarily." *United States v. Anglin*, 215 F.3d 1064, 1068 (9th Cir. 2000). The scope of such a waiver is demonstrated by the express language of the plea agreement. *Id.* Nevertheless, even an express waiver may not bar an ineffective assistance of counsel claim challenging the knowing and voluntary nature of the plea agreement or the voluntariness of the waiver itself. *United States v. Jeronimo*, 398 F.3d 1149, 1156 n.4 (9th Cir. 2005) *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007). *See also Washington v. Lampert*, 422 F.3d 864, 870 (9th Cir. 2005) (same in context of § 2254 habeas petition).

**A. Plea Agreement**

The Plea Agreement at issue expressly stated that the right to bring a § 2255 motion was waived:

> A. In exchange for the Government's concessions in this Plea Agreement, with the exception of defendant's Motion to Dismiss for Speedy Trial Violations (Docket No. 490), and Motion to Dismiss for Pre-Indictment Delay (Docket No. 489), and as provided in subparagraph B, the defendant waives to the full extent of the law any right to appeal or to collaterally attack the conviction, entry of judgment, sentence (including any restitution or forfeiture order), or entry of sentence. This waiver includes appeals and collateral attacks

based on any source whatever, including but not limited to . . . 28 U.S.C. §§ 2241-2255 (habeas corpus).

B.     Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal if the sentence imposed exceeds the statutory maximum as determined by the district court;

C.     Notwithstanding subparagraph A, *the defendant shall retain the right to file one habeas petition (motion under 28 U.S.C. § 2255) if the defendant believes he received ineffective assistance of counsel based solely on information not known to the defendant at the time the district court imposed sentence and which, in the exercise of reasonable diligence, could not have been known by the defendant at that time*.

*Plea Agreement* at 15-16 (emphasis added), Crim. Dkt. 666 at 17-18.

The Government claims that Sperow has alleged nothing in his § 2255 Motion that was not known to him or that could not have been known by him in the exercise of reasonable diligence at the time the Court imposed sentence. To avoid the clear waiver, Sperow has identified in his Response several factors that he claims he did not know at the time of sentencing.

First, Sperow claims that defense counsel provided ineffective assistance of counsel when negotiating the Plea Agreement under the belief that the career offender provision of the sentencing guidelines applied, that Sperow did not know that the career offender provision did not apply to him, and that the Government breached the Plea

Agreement because it "negotiated an agreement under the 'guise' that [he] was a career

offender."[2] *Sperow Response* at 4-6. However, Sperow was indeed subject to the career

offender provision. *See PSR* ¶ 405. Because the calculated offense level was greater

than that provided for in the career offender guideline, the only impact of the career

offender designation was the increase in criminal history category from IV to VI. *See

PSR* ¶ 405 (citing § 4B1.1(b)(A)). Sperow's total offense level after certain adjustments

was calculated to be 37. *See PSR* ¶ 406. With a criminal history category of IV, his

guideline range would have been 292-365. With a criminal history category of VI, his

guideline range was 360-life.

Second, Sperow claims that because the Sentencing Reform Act of 1984 was not

in existence until November 1, 1987, his prior criminal conduct before that time could not

be used as a basis for the career offender enhancement. *Sperow Response* at 6-7. His

unsupported allegation is groundless. The Ninth Circuit has held that conduct and

convictions occurring prior to November 1, 1987 are properly counted when determining

career offender status:

> . . . Congress did not intend for all criminals to start with a
> clean slate on November 1, 1987. On the contrary, Congress
> specifically mandated that the Sentencing Commission use

---

[2] "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time
he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is
either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior
felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a).

prior convictions in determining career offender status of defendants and in otherwise determining a defendant's criminal history for sentencing purposes.

*United States v. Sanchez-Lopez*, 879 F.2d 541, 561 (9th Cir. 1989) (citing 28 U.S.C. §§ 994(h) and (i)).

Third, Sperow argues that he could not have known that defense counsel failed to object to the Presentence Report within the 14-day limit pursuant to Rule 32(f)(1) of the Federal Rules of Criminal Procedure after Sperow notified him of various alleged inaccuracies in the PSR. *Id*. at 7. The Court disagrees. Sperow would have known at sentencing, if not likely before, that defense counsel did not pursue his stated objections. In any event, not only would none of the alleged inaccuracies Sperow identified have had any bearing on the guideline calculation, Sperow was not sentenced under the guidelines.[3] Accordingly, defense counsel was not ineffective for failing to object.

---

[3] For example, Sperow refers to the discrepancy between co-Defendant Mark Kitzman's two interviews where in his first interview he stated he never had any drug dealings with Sperow and in his second interview he stated that he obtained four loads of 180 to 200 pounds of marijuana from Sperow. *Cf. PSR* ¶ 254 and ¶¶ 258-59. In computing the drug quantity, the Probation Officer, using the lower end of the 180-200 range, attributed 720 pounds or 326.59 kilograms of marijuana based on Kitzman's statement. *PSR* ¶ 394. He found the total drug quantity to be the marijuana equivalent of 205,409 kilograms resulting in a base offense level of 38. *PSR* ¶¶ 397-98. At the time of Sperow's sentencing, the guidelines provided for a base offense level of 38 for 30 kilograms or more of marijuana. *USSG* § 2D1.1(c)(1). Clearly, the challenged drug quantity would have had no effect of the base offense level. Sperow also claims that defense counsel failed to object to the allegedly substantially overvalued list of assets attributed to him. *PSR* ¶ 436. However, the value of the assets has no effect on the guideline calculation and would not have increased Sperow's offense level. The base offense level of 38 was based solely on drug quantity. Two levels were added for the § 1956 money laundering conviction and three were then deducted for acceptance of responsibility resulting in a total offense level of 37. *PSR* ¶¶ 398-406.

Fourth, Sperow claims that defense counsel was ineffective for not appealing the Preliminary Order of Forfeiture to contest the listing of certain properties that were exempt from forfeiture pursuant to the agreement as orally stated at the change of plea hearing and which the Government allegedly continues to forfeit in breach of the Plea Agreement. He claims that he could not have known at the time of sentencing that defense counsel would have failed to challenge the Preliminary Order of Forfeiture or that the Government would breach the Plea Agreement. He concludes that if defense counsel had appealed the Preliminary Order of Forfeiture, the outcome could have been more favorable to him. However, a review of the Preliminary Order of Forfeiture confirms that it was in accordance with the Plea Agreement and discussion at the plea hearing.

Sperow claims that it was his understanding when he left the plea hearing that the 1433 Mt. Pleasant and the Santa Rosa Creek properties would be returned and exempt from forfeiture, yet the Government is pursuing forfeiture on the grounds that Sperow had not provided complete and truthful information.

The Government filed its Motion for Preliminary Order of Forfeiture (Crim. Dkt. 855) on June 16, 2009, the day before the sentencing hearing commenced. The Court entered the Preliminary Order of Forfeiture (Crim. Dkt. 872) on June 26, 2009, the day after sentencing concluded. It excludes the 1433 Mt. Pleasant property from seizure (*See POF* at 18) and provides that it would be "handled as described in the Plea Agreement.

*POF* at 18; 20.  With regard to the Santa Rosa property, it states that it shall be "handled as described in the Plea Agreement."  *POF* at 20.

### 1433 Mt. Pleasant Street

The Plea Agreement provides that "in consideration for the defendant's complete and truthful cooperation, it will not seize and will not sell the property located at 1433, 1433 1/2 and 1435 Mount Pleasant Street, Los Angeles County, Los Angeles, California . . . during the pendency of the defendant's direct appeal as to his Motion to Dismiss for Speedy Trial Violations (Docket No. 490) and Motion to Dismiss for Pre-Indictment Delay (Docket No. 489)."  *Amended Plea Agreement* IV.E. at 9, Crim. Dkt. 666 at 11. The Agreement further provided, among other things, that Sperow's family would maintain custody of the property during the pendency of the appeal.  *Id*. Finally, with respect to this property, the Plea Agreement contained the following provision addressing the treatment of the property if his appeal were unsuccessful:

> If the defendant's criminal convictions are not reversed, and if he has provided complete and truthful cooperation as provided in the Plea Agreement, the Government agrees that it will take into consideration the legitimate income defendant has earned as a builder/contractor, in a determination of a final order of forfeiture in this criminal case as to the Mount Pleasant property, and will not seek forfeiture of the Mount Pleasant property to the extent of legitimate origin.

*Amended Plea Agreement* at 10, Crim. Dkt. 666 at 12.

At the change of plea hearing, AUSA Hall confirmed that the Mt. Pleasant property would be returned based on evidence of legitimate income and Sperow's

cooperation "and the parties complying with the terms of the Plea Agreement." *Plea Tr.* at 19-20. As stated above, the Preliminary Order of Forfeiture excepted the property from the Government's request for authorization to seize Sperow's property. Thus, there were no grounds for defense counsel to object at the time it was entered.

### Santa Rosa Property

With respect to the Santa Rosa property, the Plea Agreement provided that the Government would not sell the property during the pendency of the appeal and further provided that the Department of Treasury or its designee would maintain custody of the property. *Amended Plea Agreement* at 9, Crim. Dkt. 666 at 11. It did not contain the same language regarding consideration of legitimate income as it did for the Mt. Pleasant property if his appeal were unsuccessful. *Id*. at 10. Contrary to Sperow's repeated claims, there was no discussion of the Santa Rosa property at the change of plea hearing.[4] The Preliminary Order of Forfeiture specifically addressed the Santa Rosa property and stated that it would be "handled as described in the Plea Agreement." *POF* at 20. Thus, there were no grounds for defense counsel to object to or appeal the Preliminary Order of Forfeiture at the time it was entered.

---

[4] The only other property Sperow mentioned at the plea hearing was "7540 Jordan." *Plea Tr.* at 18. Sperow initially thought that the Plea Agreement provided for its return. However, it became clear that only the 1433 Mt. Pleasant property was potentially subject to return under the Plea Agreement. Sperow did not press the matter further with regard to 7540 Jordan.

Based on the above, none of the issues Sperow raised as examples of issues not known to him at the time of sentencing has any merit. Therefore, assuming a knowing and voluntary waiver, Sperow's § 2255 Motion is subject to dismissal.

## B. Plea Hearing

The Court conducted a very extensive plea colloquy with Sperow as an active participant.

First, the Court found that Sperow was competent to enter a plea. *Plea Tr.* at 3-4; 28-29, Crim. Dkt. 1184. The finding was based, in part, on defense counsel's response to the Court's inquiry as to whether he had any doubt as to Sperow's competence:

> None whatsoever, Your Honor. He is a very intelligent, thoughtful man. We have spent a lot of time going over drafts of this plea agreement. He has meaningful and articulate, intelligent input that has resulted in changes to some of the drafts. He's conversant with the terms and conditions of the plea. He is in all aspects that I am aware of quite competent and capable.

*Plea Tr.* at 3-4.

Sperow then stated that he had adequate time to discuss his case and the sentencing guidelines with counsel and was satisfied with his representation. *Id*. at 4. The Court then explained that it would establish an offense level and consider it along with his criminal history category to determine an advisory guideline range which would be considered along with other statutory sentencing factors, relevant conduct, and uncharged conduct in determining a reasonable sentence. *Id*. at 4-5. Sperow stated that he understood. *Id*. at 5. As especially relevant here, the Court advised Sperow that if he

had two prior felony convictions of either a crime of violence or a drug trafficking offense he could be sentenced as a career offender which would greatly enhance the guideline range and punishment. *Id*. Sperow stated that he understood. *Id*.

The Court then further explained the guidelines and the sentencing process before explaining the rights Sperow was giving up by pleading guilty. *Id*. at 5-8. Sperow stated that he understood, that he had no questions, and that he wished "to plead guilty and reserve the right of appeal in accordance with the plea agreement." *Id*. at 8. Sperow then testified that he had read the Indictment, reviewed the charges with counsel, and understood the charges. *Id*. at 9. He also stated that he understood the maximum penalties of life for the drug conspiracy count and twenty years on the money laundering conspiracy count and the mandatory minimum sentence of ten years on the drug conspiracy count. *Id*. at 9-10. Finally, Sperow stated that he understood that he was required to forfeit property described in the Plea Agreement, that he was pleading to a felony offense, that he would be permanently deprived of certain rights and lose his eligibility for accrued or future federal benefits, and that he would serve a period of supervised release after his release from incarceration. *Id*. at 12-13.

AUSA Stiles recited the factual basis of the Plea Agreement, and Sperow stated that he agreed with the summary. *Id*. at 13-15. More specifically, Sperow agreed that he was involved in the drug conspiracy from between the dates of 1975 and May 23, 2007 involving more than 1,000 kilograms of marijuana; that he was involved in the money laundering conspiracy from an unknown date but at least between the dates of October

27, 1986, and May 23, 2007; and that certain property was subject to forfeiture in connection with the drug trafficking and money laundry offenses. *Id.*

With regard to the forfeiture allegations, Sperow stated that the majority of the property came from legitimate sources but that he had elected to plead guilty given what defense counsel described as the "expansive nature of the doctrines of money laundering, particularly as they pertain to co-mingling and what happens when funds that are derived from specified unlawful activities are utilized in any capacity on properties." *Id.* at 16. The Court and counsel then engaged in further discussion regarding the adequacy of Sperow's admissions regarding the forfeiture. *Id.* at 17-22.

AUSAs Stiles and Hall explained that recognizing that Sperow had some legitimate employment over the years, the Plea Agreement contained the Government's agreement to return certain forfeitable assets to Sperow in exchange for his agreement not to contest the forfeiture of other assets. *Id.* 19. There was extensive discussion as to those provisions. *Id.* 17-22. In the course of the discussion, Sperow stated that "I'm not here to dispute the plea agreement." *Id.* at 21.

Ultimately, Sperow agreed with the Court's summary that since, given the commingling, there was no clear or easy way to decide which property or portion thereof should be forfeited, he agreed to resolve the dispute by agreeing that certain properties would be returned to him and certain properties would be forfeited and that he was satisfied that the properties being forfeited to the Government were either properties in which some drug-generated funds were commingled in that asset or that the asset is being

substituted for other property. *Id*. at 22. More specifically, Sperow acknowledged the agreement that the "Mt. Pleasant" property would be returned based on Sperow's cooperation and the parties' complying with the terms of the Plea Agreement but that there was no agreement to return the Jordan Avenue property. *Id*. at 19-20. Although the focus of the Court's colloquy was the return of the Mt. Pleasant property provided that Sperow cooperated, both AUSA Hall and the Plea Agreement also stated that any return of property would be premised on cooperation and on determining whether and how much property was purchased with legitimate funds. *Id*.

The Court then thoroughly reviewed the various provisions of the Plea Agreement, and Sperow stated he had reviewed each and every provision before signing it. *Id*. at 24. He testified that he had not only read each provision but had an opportunity to review the provisions with counsel, that he fully understood each provision before signing the Plea Agreement, and that he understood that he had waived some or all of his rights to pursue habeas corpus relief. *Id*. at 24-25.

Sperow next testified that no one had made any promises other than those in the Plea Agreement to induce him to plead guilty. *Id*. at 25. He testified that no one had made any prediction or promise as to his sentence other than the range set forth in the Plea Agreement. *Id*. Mr. Gordon then stated that he was satisfied that Sperow's plea of guilty would be knowledgeable and voluntary, Sperow entered his plea to each charge, and the Court accepted the plea having found that it was knowing and voluntary. *Id*. at 27-28.

MEMORANDUM DECISION AND ORDER - 28

C.      **Voluntary and Intelligent Plea**

A guilty plea is constitutionally valid only if it is "voluntary" and "intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). A guilty plea is deemed valid when a defendant is advised of the nature and elements of the charges against him as well as the possible punishment and understands that he is waiving his constitutional rights to avoid self-incrimination, to confront his accuser, and to have a jury decide his case. *See Brady*, 397 U.S. at 749. *See also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). Furthermore, to be valid, a plea must not be made based on threats, misrepresentations, or improper promises. *Brady,* at 755.

Statements made in open court at the time of a plea carry a strong presumption of verity and are entitled to great weight. *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also United States v. Kazcynski*, 239 F.3d 1108, 1114-15 (9th Cir 2001) ("substantial weight" must be given to in-court statements). Even though that presumption is not necessarily an insurmountable barrier to an evidentiary hearing, the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id*. (citations omitted).

Here, the Plea Agreement, the very extensive plea colloquy, and Sperow's sworn testimony amply demonstrate that Sperow was well aware of and agreed to the terms of the Plea Agreement and formed the basis of a knowing and voluntary plea. Indeed, as

mentioned above, Sperow even stated at the plea hearing that he was not contesting the Plea Agreement.  Therefore, the waiver is binding unless the plea was induced by the alleged ineffective assistance of counsel.

**2.     Ineffective Assistance of Counsel**

As stated above, Sperow has raised sixteen claims of ineffective assistance of counsel and one claim of pre-arraignment denial of counsel.  However, none could be said to have rendered his plea involuntary.  Thus, all of his claims are barred.  However, even if they were not, they would fail.  The Court reaches this conclusion based, in part, on Mr. Gordon's unrefuted Affidavit (Civ. Dkt. 21-1) and, in part, on the conclusory and speculative nature of Sperow's allegations as explained more fully below.  At the outset, the Court notes that Mr. Gordon is a very experienced criminal defense attorney who has been on the CJA panel of the District of Idaho for over twenty years and who has appeared before this Court on numerous occasions.

According to his Affidavit, Mr. Gordon's relationship with Sperow was troubled from the time he was asked to appear at Sperow's arraignment in January of 2007.  The difficulties were caused by Sperow's insistence that he represent himself after Mr. Gordon would not comply with his directives all of which were procedurally or substantively improper and similar to the pro se "constitutionalist" pleadings Sperow had filed prior to arraignment.  *Gordon Aff.* ¶ 7.  As a result, Mr. Gordon was appointed stand-by counsel.  Sperow continued representing himself until his arraignment on the First Superseding Indictment in July of 2007 at which time he agreed to allow Mr.

Gordon to represent him.  By then, Mr. Gordon had a "considerable amount of catching up" to do and a client who did not trust or respect him although that mistrust "may have abated over time."  *Id*. at ¶ 15.  Mr. Gordon's specific comments regarding each claim are included in the Court's discussion below.

### A.      Failure to Conduct Any Pretrial Investigation (Ground One)

Sperow alleges several areas in which Mr. Gordon was ineffective at the pre-trial investigation stage:  (1) in failing to hire a private investigator at Government expense, (2) in failing to interview or even contact "favorable material witnesses, codefendants and/or other persons that would have provided the necessary exculpatory information," (3) in failing to discover that "the testimony of family members of favorable witnesses that died in the interim would have provided alibis as to Movant's whereabouts on specific dates and times critical to his defense," (4) in failing to discover that specific co-Defendant's statements were false and misleading, (5) in failing to consult and hire expert witnesses to challenge the Government's experts, and (6) that the cumulative effect of these errors deprived him of effective assistance of counsel.  With respect to all of these claims, Sperow asserts that he advised Mr. Gordon of what needed to be done and which people needed to be contacted.

As the Government observes, Sperow provided some specific claims of failure to conduct pretrial investigation.  However, he does not identify the alleged family members of deceased witnesses, the names of the deceased witnesses, their testimony, or how it would have changed the outcome of the case.  Nor did he identify which co-defendants or

other persons would have been willing and able to testify on his behalf or identify the "critical dates and times" for which they would have established an alibi.

As part of what he characterizes as his extensive pre-trial investigation, Mr. Gordon states that met with several of the potential witnesses Sperow identified, but many were either dead, unreachable, people whom Sperow did not want him to contact, people arrested for similar crimes, co-defendants in previous cases, represented individuals who were advised not to speak with him, and others who "had no interest in jeopardizing their own fortunes and freedom through association with Sperow." *Gordon Aff.* ¶¶ 17-19. "Sperow was especially protective and solicitous of his own family members, many of whose dealings with Sperow were being closely scrutinized by representatives of the Government," several of whom had counsel of their own, and all of whom "were quite circumspect, and fearful that their dealings with Sperow would lead to their being charged criminally." *Id.* ¶ 20.

According to Mr. Gordon, Sperow eventually recognized that if he lost on any count at trial, he "never would have gotten out of prison." *Id.* at ¶ 21. Sperow also desired "to spare his family members. More than anything else, the fear that his aged parents would be charged with crimes or be forced to forfeit all of their property drove his decision" to plead guilty. *Id.* at ¶ 22. In any event, in Mr. Gordon's opinion, the Government's case was primarily a "paper" case much of which could not be disproved by alibi witnesses. *Id.* at 25.

In his Response to the Motion to Dismiss, Sperow does not provide the missing details. Nor does he refute Mr. Gordon's Affidavit. He merely generally contends that "the issues raised in his § 2255 Petition were not known to him at the time of sentencing and could not have been known to him in exercise of reasonable diligence." *Sperow's Response* at 2.

Sperow's claims of ineffective assistance of counsel for failure to conduct any pretrial investigation are subject to dismissal as conclusory and speculative and patently incredible in view of his statements made under oath at the plea hearing. Furthermore, he knew of these alleged failings at the time he entered his plea of guilty. In other words, he knew that Mr. Gordon had not done what he had instructed him to do. Finally, Mr. Gordon's pretrial investigation appears to have been guided by strategic decisions based on the circumstances and realities of the case.

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *See Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010) (citing *Strickland*, 466 U.S. at 690 and *United States v. Mayo*, 646 F.3d 369, 375 (9th Cir. 1981) (per curiam)). Indeed, considerations surrounding these strategic choices in the pre-trial context "make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo*, 131 S.Ct. at 741.

**B.    Failure to File a Motion to Suppress (Ground Two)**

Sperow alleges that Mr. Gordon failed to move to suppress evidence recovered from the search of his attorney (and later co-Defendant) Lawrence Weitzman's office in violation of the attorney-client privilege. Sperow does not identify any such privileged seized documents or state how he was prejudiced by the seizure. Mr. Gordon notes that the "search was done by a separate 'taint' team and the seized evidence was presented to and reviewed by a special master in the Eastern District of California, who screened out confidential attorney-client communications and other privileged documents, that were not provided to the prosecution." *Gordon Aff.* at ¶ 26. He also questions Sperow's standing to challenge the search. *Id.* Sperow did not provide any additional information on this claim in his Response. Sperow would have known at the time he entered his plea and at the time of sentencing that Mr. Gordon had not filed a motion to suppress. A conclusory allegation of ineffective assistance of counsel with no allegation of prejudice renders this claim subject to dismissal.

### C. Failure to Seek the Appointment of a Forensic Accountant (Ground Three)

Sperow contends that he advised Mr. Gordon about the need for a forensic accountant to document the origin of his assets. Upon Mr. Gordon's failure to engage the services of a forensic accountant, Sperow urged him to communicate with CPA Richard Levy and provided Mr. Gordon with a chronology of his employment history and financial investments for the period 1966-79. He alleges that Mr. Gordon "did not communicate effectively with CPA Levy" and that Mr. Gordon thus did not discover

exculpatory information about the origins of his assets. Sperow supported this claim by the Affidavit of Richard Levy (Civ. Dkt. 52-1). Mr. Levy stated that he contacted Attorney Gordon on or about July 2007 regarding Sperow's financial history and that he was to work with him to review records to assist with the defense of the money laundering charge. *Levy Aff*, ¶¶ 4-5. Mr. Gordon provided him with CDs of financial data, but he never responded to Mr. Levy's phone calls about the data despite repeated attempts. *Id*. ¶ 5. Mr. Gordon responded to only one or two of his emails. *Id*.

Mr. Gordon responds that even if records relating to Sperow's employment with the City of Los Angeles from the 1960s had been available, they "would have hardly made a dent in the mountain of paperwork in the hands of the Government, showing Sperow's long history of earning large sums of money from drug dealing." *Gordon Aff*. at 26. The Court notes also that Sperow stated at the change of plea hearing that he recognized that essentially all of his assets were either directly forfeitable, forfeitable due to commingling, or forfeitable as substitute assets. As with Sperow's preceding claims, he knew at the time he entered his plea and at sentencing that Mr. Gordon had not engaged a forensic accountant or consulted with Mr. Levy. His conclusory, non-specific claim that he was prejudiced by Mr. Gordon's failure to engage a forensic accountant is subject to dismissal.

### D. Failure to Prepare for Trial (Ground Four)

Sperow alleges that counsel "refused" to prepare for trial despite his desire to go to trial, that counsel sought continuances, that counsel continued to "goad" him toward a

plea agreement rather than prepare for trial, and that he did not act as an advocate for him pretrial or after entry of his plea, all to his prejudice. The Court notes that his allegations regarding pretrial advocacy are rebutted by his sworn statements at the plea hearing.

Mr. Gordon asserts that he encouraged Sperow to enter a Plea Agreement in part because Sperow was facing a sentence that he would not likely complete within his lifetime given the § 851 Information and in part based on Sperow's insistence that he would not subject his parents and siblings to the ordeal of a trial. *Gordon Aff.* at ¶¶ 21; 28. Sperow did not counter these assertions in his Response.

With respect to pretrial advocacy, the Court notes that counsel filed Motions for Discovery (Crim. Dkts. 159, 180, 181), Motion for Extension of Time to File Pre-Trial Motions (Crim. Dkt. 268), Motion to Sever (Crim. Dkt. 482), Motion to Dismiss for Speedy Trial Violations (Crim. Dkt. 484), Motion to Dismiss Vindictive Prosecution (Crim. Dkt. 486), Motion to Dismiss for Pre-Indictment Delay (Crim. Dkt. 489), Motion for Change of Venue (Crim. Dkt. 495), Motion for Joinder in co-Defendants' Motions (Crim. Dkt. 500), Notice of Intent to Assert and Rely on Statute of Limitations (Crim. Dkt. 502), Motion for Joinder in All Motions Filed by Defendant Hammons (Crim. Dkt. 556), Motion to Stay Interlocutory Sale of Certain Property (Crim. Dkt. 557), Motion for Reconsideration (Crim. Dkt. 631), Statement of Newly Discovered Authority Re: Speedy Trial (Crim. Dkt. 635), and related Affidavits and Replies in connection with those motions. Contrary to Sperow's allegations, Mr. Gordon was strenuously advocating

pretrial for him. That he was not successful with these motions does not indicate ineffective assistance of counsel.

Although this claim is entitled "failure to prepare for trial," the body of the argument also states that after entry of his plea, counsel did not act as an advocate for him and he was therefore prejudiced. This portion of the claim is subject dismissal as being devoid of any factual support alone.

### E. Failure to Challenge the Money Laundering Counts Pursuant to the Supreme Court Decision in *Santos* (Ground Five)

Sperow alleges that counsel failed to properly research and investigate the money laundering statute; "or was unaware, uninformed or indifferent to the Supreme Court decision in *Santos*" as it applied to him; and failed to raise the issue with the Court or discuss it with him thereby causing him to be prejudiced. He does not explain *Santos*' application to his case or the resulting prejudice.

Counsel states that he extensively researched the money laundering statute including specifically researching venue issues. *Gordon Aff.* at ¶ 29. He "believes" he was aware of *Santos* and discussed it with Sperow. *Id*. The Court need not resolve the issue of whether counsel was aware of, researched, and discussed *Santos* with Sperow. *Santos* was simply not applicable.

In *United States v. Santos*, 553 U.S. 507 (2008), a case involving a predicate offense of gambling, the Supreme Court held in a plurality decision that "proceeds," then undefined in the money laundering statute, 18 U.S.C. § 1956, should be limited to

"profits" since that is more "defendant-friendly" than the more broad definition which would include "receipts." *Santos*, 533 U.S. at 514. The Court reasoned that a "merger problem" would arise if the "receipts" definition were used since "nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute." *Id*. at 515-16. In his tie-breaking concurring opinion, Justice Stevens agreed with the result but opined that "proceeds" could mean "profits" in connection with certain predicate crimes and "receipts" with others. *Id*. at 524; 526 & n.3.

The Ninth Circuit subsequently decided that under *Santos* "proceeds' means 'profits' in the money laundering statute only where viewing 'proceeds' as 'receipts' would present a 'merger' problem of the kind that troubled the plurality and concurrence in *Santos*." *United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir. 2009) (addressing *Santos* in the context of mail fraud charges). As especially relevant here, the Ninth Circuit followed *Van Alstyne* with a decision involving a drug conspiracy predicate offense. It noted that "[b]ecause neither the [drug] conspiracy nor the drug possession count . . . presents a merger problem, neither requires narrowly defining 'proceeds' as 'profits' for the money laundering counts." *United States v. Webster*, 623 F.3d 901, 906 (9th Cir. 2010). Noting that five justices in *Santos* agreed that "the legislative history of § 1956 makes it clear that Congress intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales," the Ninth Circuit stated, "[w]e, therefore, read *Santos* as holding that where, as here, a money laundering count is based on transfers among co-

conspirators of money from the sale of drugs, 'proceeds' includes all 'receipts' from such sales." *Id.* Accordingly, to the extent that Sperow is alleging that only profits and not receipts should have been considered, his claim must fail. Thus, Sperow can demonstrate neither ineffective assistance of counsel nor prejudice as to the claim that counsel failed to consider the ramifications of *Santos*.

**F.  Failure to Investigate and Prepare for the Sentencing Phase of the Case (Ground Six)**

Sperow alleges that counsel's failure to investigate and prepare for the sentencing phase violated ABA standards and thus prejudiced him. This speculative and conclusory allegation is totally devoid of any factual details or support and does not warrant further discussion.

**G.  Failure to Raise Meritorious Challenge to Court's Reliance on Certain Factors Raising His Offense Level (Ground Seven)**

Sperow alleges that counsel failed to challenge the predicate offenses triggering the career offender enhancement as being "outside the fifteen year window pursuant to the United States Sentencing Guidelines § 4A1.1 and 4A1.2 which must be read together." Defense counsel and the Government note that Sperow overlooks the fact that this was a binding Plea Agreement sentence with a very narrow, specific agreed-upon sentencing range and not a guideline sentence. *Mot. to Dismiss* at 24; *Gordon Aff.* at ¶ 30. The Court agrees and also refers to the career offender discussion above where the fallacy of the premise of Sperow's argument is addressed.

Finally, even assuming Attorney Gordon's performance was deficient, Sperow's "post-hoc" claim that he would have gone to trial if he had known that the Career Offender enhancement did not apply (even if it did not in fact apply) is not sufficient to establish prejudice. In guilty plea situations, part of the prejudice inquiry focuses on the likelihood of receiving different advice or a more favorable outcome at trial than a defendant got as a result of the guilty plea. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). *See also DeRoo v. United States*, 223 F.3d 919, 925-26 (8th Cir. 2000) (defendant's assertion that he would have gone to trial had his counsel not failed to file a motion to dismiss did not establish prejudice where there was no reasonable probability that the motion would have been successful).

Here, Sperow had already failed in his efforts to have his Indictment dismissed, the evidence was overwhelming, and several of Sperow's co-Defendants who named Sperow as a source of supply would have likely testified at trial. There is no reasonable probability that Sperow would have prevailed at trial.

## H. Failure to Challenge Erroneous Marijuana Amounts in PSR (Ground Eight)

Sperow's sole claim here is "Counsel failed to ever address the alleged amounts of marijuana stipulated in the indictment and the PSR, thus prejudicing the Movant." *§ 2255 Motion* at 9-A. This speculative and conclusory allegation is totally devoid of any factual details or support. However, Sperow did expand on this claim in his Response. The Court refers to its discussion above as grounds for dismissal.

## I. Failure to Challenge the Venue Regarding the Methamphetamine Charged in the Predicate Acts and Addressed in the PSR (Ground Nine)

Sperow alleges that the methamphetamine charged in Predicate Act 49 was previously charged in an indictment brought in the Southern District of California that was dismissed in January 2007 and which the United States Attorney's Office for the District of Idaho failed to disclose and defense counsel failed to discover could not have been properly charged in the District of Idaho. The Government notes that counsel brought a motion to dismiss on venue grounds which was denied prior to engaging in the plea process. *Mot. to Dismiss* at 25. Counsel states that Sperow did not understand the concept of "related conduct" and "how even charges on which an acquittal was obtained can be swept in under this exceedingly broad umbrella." *Gordon Aff.* ¶ 31.

Counsel did indeed file a Motion to Dismiss for Improper Venue (Crim. Dkt. 495). It challenged venue on numerous grounds pertaining to all counts. While it did not specifically address the methamphetamine allegation, it did address controlled substances in general noting that the Government had not and could not directly link Sperow to any quantity of controlled substances that was shipped to the State of Idaho. *Mot. to Dismiss* at 3, ¶ 2.c.). The Court denied the Motion without prejudice after defense conceded at oral argument "that it would be premature to dismiss the case at this point on the basis of lack of venue, but put the Government on notice that they would be challenging venue at trial and would be moving at the close of the Government's case-in-chief to dismiss the case for a lack of venue." *Mem. Dec.* at 10, Crim. Dkt. 616. The fact that Sperow

pleaded guilty precluded that argument from being raised. However, Sperow knew both at the time of the plea hearing and at sentencing that counsel did not challenge venue on the methamphetamine issue and chose to proceed with the plea.

**J.      Failure to Timely Object to Presentence Report (Ground Ten)**

**Failure to Advise the Court that the Presentence Report Was Factually Inaccurate and Fundamentally Defective (Ground Eleven)**

Sperow alleges that he advised defense counsel of several objections, concerns, and inaccuracies with and in the Presentence Report and the Addendum, but counsel failed to argue them to the Court. The Government contends that both claims are wholly conclusory and without factual support. The Court agrees. Counsel states that it was Sperow's extensive criminal history that led to the sentence at the high end of the agreed upon range. *Gordon Aff.* ¶ 32.

The Court notes that Sperow outlined several objections in his Response. *Response*, at 7-8. However, the Court addressed those issues above and determined that they had no merit.

**K.      Procedural Denial of Assistance of Counsel Prior to Arraignment (Ground Twelve)**

Sperow claims that he was denied assistance of counsel prior to his arraignment on January 3, 2007 although the Court conducted "numerous hearings" in his absence. He also alleges that he was not served with Docket Entries 107, 123, 126, or 127 or any notices, motions, and/or Court orders prior to that date which violated his right to be present at all proceedings and violated procedural rules for serving the opposing party

timely.  *§ 2255 Motion* at 9-B.  The Government points to Sperow's refusal to accept even standby counsel for six months.  *Gordon Aff.* ¶¶ 9-11. The Court record bears that out.  *See Minutes*, Crim. Dkts. 150; 245.  Counsel indicates that Sperow did not agree to his participation until July, 2007.  *Gordon Aff.* ¶ 12.

The Indictment (Crim. Dkt. 1) was filed and arrest warrants (Crim. Dkts. 2-13) were issued for all twelve named Defendants on September 13, 2006, all of which were sealed.  Sperow commenced his pro se filings on December 12, 2006.  *Order to Show Cause*, Crim. Dkt. 132.  On December 14, 2006, the Government filed its Request for Production of Federal Prisoner in Custody (Crim. Dkt. 147) to secure Sperow's appearance at his arraignment scheduled for January 3, 2007.  On December 28, 2006, the Court appointed Mr. Gordon as attorney for Sperow in advance of the arraignment. *Notice of Appointment*, Crim. Dkt. 146.

As stated above, Sperow was arraigned on January 3, 2007, before United States Magistrate Judge Mikel Williams.  The minutes indicate that he did "not request counsel," that Judge Williams advised Sperow "of all of his rights associated with appointment of counsel and the ramifications of appearing pro se," and that Judge Williams appointed Phil Gordon as standby counsel.  *Minutes*, Crim. Dkt. 150.  *See also Arraignment Tr.*, Crim. Dkt. 201 (apparently misdated 4/19/2007).  Thus, the record clearly reflects that lack of counsel was Sperow's informed choice.

No substantive hearings took place prior to Sperow's arraignment.  A review of the docket reflects primarily procedural orders and notices, arrest warrant returns,

arraignments and detention hearings, and motions and orders for extensions of time.  The

documents referenced by Sperow, Docket Nos. 107, 123, 126, or 127, have no relevance

to Sperow.[5]  The Court fails to see how Sperow was prejudiced by failure to receive

copies of these documents even if he were entitled to receive them prior to his

arraignment.  Sperow was to be delivered a copy of the Procedural Order for his review

and was advised to refer to the Federal Rules of Criminal Procedure for proper procedure

if he failed to execute the Procedural Order.  *Minutes*, Crim. Dkt. 150.  An internal

docket entry states that the Procedural Order was mailed to Sperow for his elections on

January 5, 2007.  On January 11, 2007, the Court *sua sponte* reset Sperow's trial date for

September 17, 2007 to conform with the extensions already granted to the other

Defendants and to avoid de facto severance from the rest of the Defendants.  *Order*,

Crim. Dkt. 155.  The Order adopted the Court's prior Order (Crim. Dkt. 134) resetting the

deadline for filing of pretrial motions to June 15, 2007.  The Procedural Order (Crim.

Dkt. 174), on which Sperow had made his elections, was signed by Judge Williams and

entered on January 19, 2007.

---

[5] Docket No. 107 is an Order approving a Stipulation (Crim. Dkt. 105) between the Government
and co-Defendants J. Phillip Keyser and Texanna Keyser pertaining to sub poenaed documents.  Docket
No. 123 is the Keysers' Notice of Joining Kent Allen Jones' Motion to Extend Deadline to File Pretrial
Motions (Crim. Dkt. 121).  Docket Nos. 126 and 127 are Orders granting the Motion and extending the
deadline for filing pretrial motions for all Defendants, including Sperow, by one week beyond the date set
in the Procedural Order.

Sperow fails to cite any authority for his alleged right to counsel prior to arraignment. He fails to allege how he was prejudiced by lack of counsel prior to arraignment, especially given that he would not even accept representation at the arraignment itself.

The Sixth Amendment right to counsel attaches only at or after the time that adversary proceedings have been initiated against a defendant "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Gouveia*, 467 U.S. 180, 187-88 (1984) (citing *Kirby v. Illinois*, 406 U.S. 682, 688-89 (1972)). *See also United States v. Harrison*, 213 F.3d 1206, 1213 n.5 (9th Cir. 2000) (citing *Gouveia*). "[T]he right to counsel exists to protect the accused during trial-type confrontations with the prosecutor . . . ." *Gouveia*, 467 U.S. at 190. *See also Beck v. Bowersox*, 362 F.3d 1095, 1101 (8th Cir. 2004) (citations omitted) ("The Sixth Amendment right to counsel attaches at a preliminary hearing or arraignment.").

According to 18 U.S.C. § 3006A(a)(1)(H), representation must be provided to a financially eligible person who is eligible for appointment of counsel under the sixth amendment of the Constitution. Section 3006A(c) provides that "[a] person for whom counsel is appointed shall be represented at every stage of the proceedings *from his initial appearance before the United States magistrate judge or the court* through appeal, including ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c) (emphasis added).

Sperow has not alleged that he was questioned by authorities after the Indictment was filed and prior to his arraignment. Nor has he alleged, nor does the record reflect, any proceedings or confrontation by the Government prior to the arraignment triggering the right to counsel. He was appointed counsel at the arraignment as required. He chose to refuse representation.

### L. Failure to Challenge Sentence Disparities (Ground 13)

Sperow claims that counsel was ineffective for failing to argue that his culpability was significantly less than that of co-Defendant Jones whose sentence was 90 months less and failing to argue disparity with others with similar criminal histories such as co-Defendants McDonald and Hammons. The Government contends that any disparity was caused by differences in timing of the co-Defendants' pleas, the degree of cooperation and assistance, criminal histories, and other factors. The Court agrees and so stated at sentencing. *Sent. Tr. 6/25/2009* at 17-18. Furthermore, defense counsel states, and Sperow did not dispute in his Response, that "the handling AUSA made more lenient offers earlier on in the case which Sperow rejected," that co-Defendant "Jones was influential in getting certain other Defendants to agree to enter guilty pleas, and in fact Jones tried on more than one occasion to persuade Sperow to plead guilty." *Gordon Aff.* ¶ 34. Sperow had the right to refuse earlier offers. However, he cannot complain when delay in entering a plea agreement resulted in any disparity of sentences among more cooperative co-Defendants.

### M. Deficient Performance at All Stages (Ground Fourteen)

Sperow alleges that counsel failed to advocate for him after he advised counsel that he wanted to proceed to trial on March 5, 2007, and would not waive his Speedy Trial rights. Aside from being repetitious of Ground Four where Sperow alleged counsel "goaded" him towards a plea, Sperow was representing himself at the time the trial was continued and the Court continued the trial *sua sponte* to avoid de facto severance. He also alleged that counsel failed to challenge the amount of drugs attributed to him in the Indictment, his participation in the conspiracy especially regarding the Idaho venue issue, and "generally issues not pertinent to the case." These allegations are repetitious of prior asserted grounds for relief, conclusory, and devoid of any detail.

### N. Failure to File a Notice of Appeal on the Preliminary Order of Forfeiture (Dkts. 857, 858, and 872) (Ground Fifteen)

Sperow alleged that counsel failed to file a notice of appeal on the Preliminary Order of Forfeiture despite notifying counsel that he desired to do so. As shown above, there was no ground for challenging something to which Sperow himself agreed and which conformed with the Plea Agreement.

### O. Failure to Assert Speedy Trial Rights (Ground Sixteen)

Sperow claims that counsel failed to assert his speedy trial rights after he advised counsel that he would not relinquish those rights. This claim is rebutted by the record. Counsel filed a Motion to Dismiss on Speedy Trial Grounds (Crim. Dkt. 484). The motion was denied. Sperow appealed the denial. The Ninth Circuit affirmed.

### P. Failure to Advise the Court Regarding Proper Credit (Ground Seventeen)

Sperow alleges that counsel failed to object to the Court's determination that he should be credited with only 53 rather than 60 months for the time he served on his Oregon sentence. The Court addressed this issue in great depth at the sentencing hearing.

The Plea Agreement provided that Sperow's sentence on the Idaho charges would run concurrently with his sentence on the Oregon charge since the latter was an overt act alleged in the Idaho case. However, by the time of sentencing, due to a successful appeal and resentencing, the Oregon sentence had been discharged. The Court, counsel, and Sperow himself engaged in an extended discussion of how best to effectuate the parties' intent to credit Sperow for the time served on the Oregon sentence. While much of the discussion referred to a period of five years or 60 months, in actuality, Sperow did not serve 60 months on the Oregon sentence. Rather, the time served due to allowances for good time credit was approximately 53 months counting from the date of his arrest on the Oregon charge on May 26, 2004, until his Oregon sentence was discharged on October 24, 2008. *Sent. Tr. 6/25/2009* at 5.

The Court ultimately determined that the 53 months would not be credited to his sentence by the Bureau of Prisons. Therefore, the Court the stated that it would first decide the reasonable sentence within the agreed upon range and then deduct 53 months from that sentence. *See generally, Sent. Tr. 6/25/2009* at 5-10. The Court confirmed that counsel was in agreement with his approach. Mr. Gordon agreed after consulting at least twice with Sperow. *Sent. Tr. 6/25/2009* at 8; 10.

MEMORANDUM DECISION AND ORDER - 48

To ensure that Sperow would not receive double credit for the time served on the

Oregon sentence, the judgment provided:

> That the defendant be credited with time served, commencing
> October 24, 2008. The defendant should not receive credit
> for any time served prior to October 24, 2008 – the date he
> completed the sentence imposed by the United States District
> Court for the District of Oregon in Case No. CR-96-58-I-JO –
> since the Court has already adjusted the defendant's sentence
> downward to account for all of the time which the defendant
> spent in custody on the District of Oregon sentence up until
> October 24, 2008 in recognition of the fact that according to
> 18 U.S.C. § 3585(b), the defendant would not receive credit
> for that time towards the sentence in this case.

*Judgment* at 2, Crim. Dkt. 883.

Sperow effectively has received credit for all time served since May 26, 2004

towards his Idaho sentence. He is not entitled to more. Counsel was not ineffective for

failing to argue that Sperow should have received 60 rather than 53 months credit for

time served on the Oregon sentence. To have received the extra seven months credit

would have gone beyond the original intent of the parties and resulted in a windfall to

Sperow. Indeed, the way the Plea Agreement was written, had the Oregon sentence not

been reduced, Sperow's Idaho sentence would have run concurrently with the Oregon

sentence only from the date of imposition of the Idaho sentence which, in effect, would

have resulted in a "credit" of less than 53 months.

**3.      Breach of Plea Agreement**

      **A.      Background**

On July 29, 2013, in his Response to the Government's Motion to Dismiss, Sperow raised for the first time the issue that he was induced to enter the plea by the promise the Government would return 1433 Mt. Pleasant and the Santa Rosa Creek property and that the Government had breached the Plea Agreement by proceeding with the forfeiture of those properties despite the allegedly clear understanding that they were to be returned and exempt from forfeiture.

As the Court stated above, there was no discussion of the Santa Rosa property at the plea hearing and no reference in the Plea Agreement to exempting it from forfeiture if Sperow did not prevail on appeal. Therefore, any claim with respect to the Santa Rosa Creek property is subject to dismissal as contradicted by the record.

With respect to the Mt. Pleasant property, Sperow attached copies of correspondence with the Government regarding the property:

> 1.      September 6, 2012 letter to Geneva Sperow (Sperow's mother) from AUSA Hall advising of the intent to seek a final order of forfeiture as to the Mt. Pleasant and Santa Rosa Creek properties because Sperow's appeal had been denied.

> 2.      September 21, 2012 letter from Sperow to AUSA Hall notifying him that the Government was breaching the Plea Agreement based on the "oral understanding at the Change of Plea Hearing that the above properties were to be returned" and advising that he "relied on the oral understanding as to which properties were exempt from forfeiture in entering the plea agreement."

> 3.      October 12, 2012 letter from Sperow to AUSA Hall advising of a further breach "because the dismissed counts were included and used against [him] for sentencing and forfeiture purposes."

> 4.     January 16, 2013 letter from AUSA to Sperow citing
> relevant provisions of the Plea Agreement regarding the
> cooperation requirement and advising Sperow that the return
> of any interest in the Mt. Pleasant property had been
> conditioned upon his "complete and truthful cooperation"
> which the Government did not receive.[6]

*Sperow Response*, Exs. A-D, Civ. Dkt. 50-2.

## B.     Discussion

Although Sperow couches his arguments in terms of an involuntary plea issue, it appears to be more a challenge to the forfeiture of the Mt. Pleasant property.  However, under either scenario, he is not entitled to relief.  The Government's position is that its "conditional obligation to carve out proved legitimate income from the amount of forfeiture as to the Mount Pleasant property was never triggered by [Sperow's] cooperation in the remaining forfeitures, since he has done nothing but fight the forfeitures, even those to which he had previously agreed."  *Govt. Response* at 14, Civ. Dkt. 58.

### *(1)     Inducement to Enter Plea Agreement*

---

[6]   The Government cited various instances of lack of cooperation including: enlisting the help of a friend to make a claim on his behalf to the Sperow Family Trust which resulted in delay and unnecessary litigation; contesting the final order of forfeiture pertaining to liquidation of assets he had agreed were forfeitable in the Plea Agreement; failing to provide truthful information regarding his handwritten "net worth" statement; and refusing to discuss his involvement in the manufacture and sale of methamphetamine and the use and ownership of his house in Ventu Park as a meth lab.  *Hall Ltr.* at 2, Ex. D, Civ. Dkt. 50-2.

To the extent that Sperow is alleging that not knowing the Government would allegedly breach the Plea Agreement with regard to the Mt. Pleasant property rendered his plea involuntary and that the waiver regarding collaterally challenging the conviction, sentence, or forfeiture should not be enforced, his claim is subject to dismissal for two reasons.

First, a plea agreement is construed as a contract between the prosecutor and the defendant. *United States v. Gonzalez-Melchor*, 648 F.3d 959, 963 (9th Cir. 2011) (citing *United States v. Streich*, 560 F.3d 926, 929-30 (9th Cir. 2009)). As such, it is governed by traditional contract law standards or principles. *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000). Just as nothing in contract law suggests that a later breach "retroactively causes the other party's promise to have been coerced or induced by fraud," "there is nothing to support the proposition that the Government's breach of a plea agreement retroactively causes the defendant's agreement to have been unknowing or involuntary." *Puckett v. United States*, 556 U.S. 129, 137 (2009). As the Supreme Court explained:

> When a defendant agrees to a plea bargain, the Government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy . . . . In any case, it is entirely clear that a breach does not cause the guilty plea, when entered, to have been unknowing or involuntary. It is precisely *because* the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain.

*Puckett*, 556 U.S. at 137-138 (citations omitted) (emphasis in original).

Second, Sperow ignores the plain reading of the Plea Agreement. Just as in contract law "[i]f 'the terms of the plea agreement on their face have a clear and unambiguous meaning, then this court will not look to extrinsic evidence to determine their meaning.'" *Streich*, 560 F.3d at 930 (citation omitted). *See also Clark*, 218 F.3d at 1095. That said, if there is an ambiguity, the court will examine extrinsic evidence such as the facts of the case to determine what the parties reasonably understood and resolve the ambiguity. *Id*. There is no ambiguity here.

Sperow focuses only on the discussion at the plea colloquy regarding the Mt. Pleasant property to the exclusion of the rest of the language of the Plea Agreement. However, the discussion does not supplant the written Plea Agreement. The discussion merely was an attempt to explain, in response to Sperow's question, that the Mt. Pleasant property *could* be returned if certain conditions were met. Sperow and the discussion at the plea hearing refer only to the § 5K1.1 cooperation which the Government reluctantly conceded had occurred. However, the Plea Agreement provided further conditions of cooperation.

The Plea Agreement provided that the Government would not seek a final order of forfeiture of certain real properties not relevant here "upon the defendant's complete and truthful cooperation as provided in Section VI ('Cooperation')." *Amended Plea Agreement* ¶ IV.E. at 8. Section VI required that Sperow not only cooperate and provide full debriefings pretrial but also in civil or administrative proceedings and post-trial proceedings. *Id*. ¶ VI.A. at 13. Most relevant, he was required "to assist in the recovery

and forfeiture to the United States of any property or property interest which may be forfeitable as the proceeds of criminal activity, or as property which was involved in or facilitated criminal activity, or which is otherwise forfeitable under federal law. *Id.* ¶ VI.A. at 14. The Plea Agreement also provided the following caution: "Any actions or statements inconsistent with continued cooperation under this Agreement . . . constitutes a breach of this Agreement." *Id.* ¶ VI.A. at 13.

The Plea Agreement also provided that if Sperow did not prevail on appeal but had provided "complete and truthful cooperation as provided in the Plea Agreement," the Government would consider any evidence of legitimate income and not seek forfeiture of the Mt. Pleasant property to the extent of the legitimate income. *Id.* ¶ IV.E. at 10. The Plea Agreement also contained a comprehensive waiver provision with regard to forfeitures and a provision to take all steps requested to pass clear title to forfeitable assets and to testify truthfully in any judicial foreclosure proceeding. *Id.* ¶ IV.E. at 11.

The Government contends that efforts to verify legitimate income were unsuccessful due to lack of employment records dating back to the early 1970s, his claim was not supported by any other financial documents, and he did not provide any other financial evidence to show how he acquired the property. *Govt. Response* at 13. However, whether this was the fault of counsel or whether there was legitimate income or not is irrelevant if Sperow did not cooperate to the full extent contemplated in the Plea Agreement.

The Government contends that Sperow violated the Cooperation provision in a number of respects in that he:

> . . . contested the forfeiture of properties he had explicitly assented to in the plea agreement, including procuring a friend to make a claim as a purported substituted trustee of Sperow's forfeited "Sperow Family Trust," thereby delaying the third-party ancillary proceedings and seeking to recover all of the properties held in the name of the forfeited "trust"; failing to identify all of his current property holdings which were listed in coded descriptions in his own handwritten 'net worth' statement, which showed approximately $11 million in assets, only a portion of which were identified/recovered; contesting the final order of forfeiture and seeking to block the sale of the Lancaster, California property in spite of his prior agreement to forfeit it under the terms of the plea agreement.[7]

*Government's Response* at 13-14, Civ. Dkt. 58.

Notably, in his Reply, Sperow did not deny these allegations.[8] Rather, he continued his claim that the Government breached the agreement by not returning the Mt. Pleasant and Santa Rosa properties. This is so, despite the fact that there was no

_____

[7] The Lancaster property was not subject to any specific provision or treatment in the Plea Agreement.

[8] The Court need not hold an evidentiary hearing on the issue of Sperow's alleged breach given that he did not dispute the Government's allegations of non-cooperation and interference with the forfeiture of some of the property. Only if Sperow countered with affidavits or evidence of specific facts rebutting those allegations would the Court be required to do so. As the pleadings stand, the issue can be conclusively decided on the Government's unrebutted allegations. *See United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003).

agreement to return the Santa Rosa property under any scenario, and that the agreement as to the Mt. Pleasant property was not unconditional.

Although the Government agreed that Sperow cooperated pretrial, it necessarily could not agree in advance at the plea or sentencing stage that Sperow had cooperated post-trial and cooperated with forfeiture matters. It defies common sense to suggest that a defendant could cooperate through sentencing to secure a favorable agreement regarding a sentence and then fail to comply with the post-conviction cooperation provisions of the Plea Agreement and expect no negative consequences. Indeed, the Plea Agreement here provides serious consequences – prosecution of dismissed charges or vacating the conviction and re-prosecuting the charges to which Sperow pleaded guilty – at the Government's option. *Amended Plea Agreement*, ¶ X.A. at 17.

### (2) Challenge to Forfeiture

A challenge to a forfeiture order is not cognizable in a § 2255 proceeding as § 2255 is available only to prisoners claiming the right to release from custody. *See United States v. Kramer*, 195 F.3d 1129 (9th Cir. 1999) (rejecting claim that restitution order violated his due process rights and right to effective assistance of counsel because § 2255 is only available to prisoners seeking release from custody and not for challenging fines or restitution orders). *See also United States v. Finze*, 428 Fed. Appx. 672 at *4 (9th Cir. 2011) (claim limited to constitutionality of a forfeiture order is not a cognizable § 2255 claim) (citing *United States v. Thiele*, 314 F.3d 399, 400 (9th Cir. 2002)); *Thiele*, *id*. (whether or not the motion contained other claims seeking release from custody, claim

of ineffective assistance of counsel for failure to argue that defendant would be unable to pay the restitution ordered was not cognizable); *United States v. Robinson*, 152 F.3d 981 at *1 n.1  (9th Cir. 1998) ("To the extent that Robinson challenges the forfeiture itself, we find such claims are not cognizable in a section 2255 motion.").  *See also Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009) (same); *Kaminski v. United States*, 339 F.3d 84, 887 (2d Cir. 2003) (same).  This is so even when claims pertaining to custodial elements of a sentence are included in the § 2255.

Based on the above, to the extent Sperow is seeking to prevent the forfeiture of the Mt. Pleasant property, the claim is subject to dismissal as not cognizable in a § 2255 proceeding.

## CONCLUSION

This is not Sperow's first time around the block so to speak given his three prior federal drug convictions.  Indeed, Sperow has filed a pro se § 2255 Motion in at least one of those cases and obtained relief.  The Court is quite familiar with him through his many initial pro se filings, conducting the change of plea hearing, and conducting the sentencing hearing over a period of two days.  Indeed, the Court even had the opportunity to listen to the tapes of several telephone conversations between Sperow while he was incarcerated in federal prison and attorney and co-Defendant Lawrence Weitzman during Weitzman's sentencing hearing.  It has no doubt that Sperow is an intelligent, articulate individual who fully understood both the ramifications and the substantial benefits of entering a plea and well as the substantial risks of going to trial.

As the Government stated in its Motion to Dismiss, Sperow's § 2255 Motion "assumes the validity of the Plea Agreement and implicitly asks the Court to rely upon it." *Mot. to Dismiss* at 18. Indeed, he appears to want the benefit of the Plea Agreement and more rather than to want it set aside and subject himself to the 360-life guideline sentence or life statutory sentence.

Sperow's claims are contrary to law, rebutted by the record, or vague and conclusory. As *Bell* recognized, it is tempting for a defendant to second-guess counsel's assistance after receiving an adverse sentence. *Bell*, 535 U.S. at 702. However, second-guessing without more is not sufficient to justify relief under 28 U.S.C. § 2255.

Sperow's claims and allegations throughout this § 2255 proceeding and his forfeiture challenges are very much at odds with his allocution at sentencing when he expressed remorse for his conduct and expressed an intent to continue to reflect on his life and essentially change his ways. *See Sent. Tr. 6/25/2009* at 12-13. Sperow played a very active role in his defense, yet he now places the blame for his sentence on his attorney and his misguided assumptions about particular legal principles. He loses sight of the fact that he likely would have received a life sentence had he proceeded to trial.

The Government stated at the outset of the sentencing hearing that it "set the bar fairly low in terms of a 3 point reduction for 5K" for purposes of the Plea Agreement. *Sent. Tr. 6/17/2009* at 5. Indeed, the Court commented at sentencing that "it was somewhat of a close call" as to whether to accept the binding Plea Agreement. *Sent. Tr. 6/25/2009* at 14. The Court further commented that the agreed upon sentencing range

"was very, very generous on the part of the government given [Sperow's] prior criminal record and the fact that there was really no reason why the government could not pursue the 851 enhancement." *Id.* at 18. The Court concluded that the Government chose "to be more lenient than what the presentence report might have indicated, given [his] extensive prior criminal history and the extent of this drug conspiracy." *Id*. at 18-19.

To have received such favorable consideration by the Government and the Court cannot be said to be the result of constitutionally deficient representation. In reaching its decision, the Court was mindful of the directives of *Strickland* and its progeny set forth above.

Sperow's conclusory, speculative, and unsupported assertions do not warrant an evidentiary hearing. He has not stated a claim for relief pursuant to 28 U.S.C. § 2255. The Government's Motion to Dismiss is granted.

## CERTIFICATE OF APPEALABILITY

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a movant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, the movant must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000). When the court has denied a § 2255 motion or claims within the motion on the merits, the movant must show that reasonable jurists would find the court's decision on the merits to be debatable or wrong. *Id.*; *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

After carefully considering the record and the relevant case law, the Court finds that reasonable jurists would not find the Court's rulings on Sperow's motion to be debatable or wrong.

## ORDER

**IT IS ORDERED:**

1. Gregory Frank Sperow's Motion Pursuant to Federal Rules of Civil Procedure, Rule 15(d) (Civ. Dkt. 45) is **DENIED**.

2. The Government's Motion to Dismiss (Civ. Dkt. 27) is **GRANTED** and Gregory Frank Sperow's Motion to Vacate/Set Aside/Correct Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Dkt. 1) and (Crim. Dkt. 1207) is **DISMISSED**. Sperow's Motion in Opposition to Government's Motion to Dismiss (Civ. Dkt. 50) and Motion to Answer Government's Response to Motion Under 28 U.S.C. § 2255 (Civ. Dkt. 51) are **MOOT.**

3. No certificate of appealability shall issue. Sperow is advised that he may still request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

4. If Sperow files a timely notice of appeal, and not until such time, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals. The district court's file in this case is available for review online at www.id.uscourts.gov.



DATED: March 30, 2015

B. Lynn Winmill
Chief Judge
United States District Court