UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No.  1:06-cr-126-BLW |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| GREGORY FRANK SPEROW, | |
| Defendant. | |

## <u>INTRODUCTION</u>

Pending before the Court is Gregory Frank Sperow's ("Sperow") Motion for Return of Property Pursuant to Rule 41(g) (Dkt. 1207).  Having reviewed the Motion together with the Government's Response (Dkt. 1210), Sperow's Reply (Dkt. 1219), the parties' respective supporting affidavits, the criminal record, and the record in the related 28 U.S.C. § 2255 proceeding in Case No. 1:12-cv-00158-BLW, the Court enters the following Order granting the Motion in part and denying in part.

## <u>BACKGROUND</u>

1.    **Factual**

On June 19, 2006, Sperow was indicted by a federal grand jury in the District of Idaho along with eleven other individuals and charged with drug trafficking, money

laundering, and related forfeitures.  *Indictment*, Crim. Dkt. 1.  Sperow and five others were also charged with operating a continuing criminal enterprise (primarily involving marijuana) from 1975 through June 16, 2006, in over twenty states.  *Id*.  The 196-page indictment included 98 predicate acts in connection with the criminal enterprise count. *Id*.

During his approximately thirty years of criminal activity, Sperow was convicted of drug trafficking charges in the districts of New Mexico, Southern California, and Oregon and sentenced to terms of incarceration in each case.  Prior to the Oregon conviction, he had been a fugitive for eight years living under an assumed identity.  His drug trafficking and money laundering activities continued during his fugitive years.  He was arrested on May 26, 2004, in Orinda, California, on a District of Oregon warrant.

**2.    Procedural**

After many unsuccessful pre-trial challenges, Sperow ultimately pleaded guilty to certain charges in the then pending Second Superseding Indictment in return for several concessions by the Government.  More specifically, he pleaded guilty pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) binding Plea Agreement to conspiracy to distribute/possess with intent to distribute controlled substances in violation of 21 U.S.C. §§  841(a)(1), 841(b)(1)(A), and 846 (Count Two); conspiracy to launder money in violation of 18 U.S.C. § 1956(h) (Count Three); drug forfeiture pursuant to 21 U.S.C. § 853(a)(1) and (2) (Count Seven); and money-laundering forfeiture pursuant to 18

U.S.C. § 982(a)(1) (Count Eight).  *Amended Plea Agreement*, Crim. Dkt. 666.[1] Counts Seven and Eight sought forfeiture of cash proceeds of $16,000,000 and the property described in Count Six which included thirteen parcels of real property, thirteen bank accounts, six conveyances including motor vehicles and aircraft, currency, computer and hard drive, and the property and proceeds of ten businesses.

On July 1, 2009, the Court imposed a sentence of 181 months on each of Counts Two and Three to run concurrently.  *Judgment*, Dkt. 883.  His conviction and sentence were upheld on appeal.  *USCA Mem. Dec.*, Dkt. 1130.  On March 30, 2015, the Court dismissed Sperow's timely filed § 2255 Motion on the merits and declined to issue a certificate of appealability.  *Mem. Dec. and Order*, Case No. 1:12-cv-00158-BLW at Dkt. 61.  On July 9, 2015, the Ninth Circuit denied Sperow's request for a certificate of appealability.  *USCA Order*, *Id*. at Dkt. 65.  On September 18, 2015, the Ninth Circuit denied his motion for reconsideration en banc.  *Id.* at Dkt. 66.  Finally, on March 21, 2016, the United States Supreme Court denied Sperow's petition for a writ of certiorari.  *Ltr. from Sup. Ct.*, *Id*. at Dkt. 68.

At the time Sperow filed the pending Rule 41(g) Motion and the Government filed its Response, the § 2255 proceeding was still pending.  Subsequently, the Supreme Court denied his petition for a writ of certiorari, and Sperow's conviction became final.

## 3.    Oregon Motion

---

[1] The Plea Agreement was amended by interlineation of the parties the day of the plea hearing to correct an error. For ease of reference, the Court will refer to the Amended Plea Agreement as the "Plea Agreement" except in citations to that document.

**MEMORANDUM DECISION AND ORDER - 3**

As more fully explained in his Motion, Sperow had first sought in the District of Oregon to have property removed from his apartment, truck, and person returned to him. *Motion* at 2-3. He did so by seeking to enforce a general order issued by that court regarding the return of his property. The district court found that the government had complied with the general order "to the extent reasonably possible" or, alternatively, that the order was moot. Sperow appealed. On June 25, 2014, the Ninth Circuit issued a memorandum decision affirming the district court. The court found that "his property was transferred to Idaho for use in his criminal prosecution there or returned to federal officials in California" where the property had been seized. *United States v. Sperow*, 581 Fed. Appx. 641, 642 (9th Cir. 2014). The court concluded, "Our disposition is without prejudice to Sperow filing a new request for return of his otherwise non-forfeited, non-contraband property in his criminal case in Idaho or any other appropriate venue." *Id*.

**4.     Idaho Motion**

Sperow states that as of the filing of his pending Rule 41(g) Motion, he had never been provided a complete inventory of his seized non-contraband, non-forfeited property being held by the Government and has not been advised where it is being stored. *Motion* at 5. He then provides his own inventory of items seized in California subsequent to his arrest. *Id*. at 6-8. The list is extensive and will be addressed more specifically below as Sperow Inventory, paragraphs 1-22, *Id*. However, generally speaking, the property includes (1) contents contained in the cab of his Ford F-250 truck or in the cross-cab toolbox at the time of his arrest and the seizure of his truck; (2) contents seized from his apartment at the time of his arrest; (3) papers and business records seized in Aptos,

**MEMORANDUM DECISION AND ORDER - 4**

California; (4) contents seized from Maxair Aviation; (5) contents contained in a seized

Cessna U206; and (6) contents contained in a seized Cessna 182.

Sperow claims that the Government has not followed proper procedure or protocol

with respect to the seized items, and they have not been declared contraband. *Motion* at

9.  In his supporting Declaration, Sperow details his observations of what was seized at

the time of his arrest and contends that he was never provided with a copy of a search

warrant for the search of his truck. *Sperow Declaration*, Dkt. 1207-1.  He alleges that he

was advised by Alameda County Jail personnel that his truck had been returned absent

personal belongings and tools.  He then provides a detailed inventory of what he claims

was in the truck and cab.  He follows with a detailed inventory of the contents of his

aircraft hangars, aircraft, apartment, and his parents' residence.

In its Response, the Government contends that of the various categories of items

sought, only one group (Sperow Inventory, paragraph 1) can be returned; namely, the

Olympus SLR camera, black Tamrac camera bag, attached 35-180 mm zoom lens, and

unattached super wide angle Macro lens.  Relying on the Affidavit of Gregory E.

Gleason, the Government further contends that it cannot release the other items for

various reasons including that they are not within the custody of the United States in the

District of Idaho, they must be retained as evidence pending conclusion of Sperow's

challenges to his convictions and sentence, or he has no standing to recover certain items.

With regard to the return of cash, coins, or other items of value, the Government contends

that these items were either returned "early on," forfeited, or never seized, and in any

event would have been sought to satisfy the $6 and $5 million forfeiture money

**MEMORANDUM DECISION AND ORDER - 5**

judgments listed in his Preliminary Order of Forfeiture (Dkt. 872) or as substitute assets
if not directly forfeitable.

The Government noted in its Response that despite agreeing in the Plea
Agreement to forfeit properties and to assist in the recovery of assets, Sperow has
"continuously fought enforcement of the forfeitures he agreed to." *Response* at 4.

Finally, in his Reply, Sperow again requests a complete inventory of property
seized in connection with the Oregon or Idaho cases "and any cases that were filed in the
Northern, Central or Southern Districts of California where property was taken." *Reply*
at 1.  He challenges the Gleason Affidavit on the grounds that it is "unsigned" and
lacking in specificity as to evidentiary value and renews his request for an inventory and
a chain of custody log.  *Id*. at 2-3.  He alleges that the seizure of property from his truck,
hangars, and aircraft was illegal.  *Id*. at 5.  And he submits the Affidavit of Bruce Allen
Borjesson in support of his claim regarding the "missing tools" from the cross-cab
toolbox that conflicts with the Gleason Affidavit which, he argues, entitles him to an
evidentiary hearing.  *Id*.  Sperow concludes by requesting the Gleason Affidavit to be
stricken as an unsigned affidavit.  *Id*. at 7.

## STANDARD OF LAW

Since 1944, Rule 41 of the Federal Rules of Criminal Procedure has provided an
avenue for individuals seeking the return of seized property.  *See* 3A Charles Alan
Wright, et al., FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 690 (4th ed.
2016).  Rule 41 addressed motions to return property in subdivision (e) until a 2002
revision redesignated that provision as subdivision (g).  *Id.*  Case law interpreting former

**MEMORANDUM DECISION AND ORDER - 6**

Rule 41(e) is generally applicable to the current Rule 41(g).  *Id.  See also De Almeida v. United States*, 459 F.3d 377, 380 n.2 (2d Cir. 2006) (noting that redesignating the provision from (e) to (g) did not involve substantive any change).

As it now reads, Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by deprivation of property may move for the property's return."  *Fed. R. Crim. P.*  41(g).  The motion is to be filed in the district court where the property was seized, and "the court must receive evidence on any factual issue necessary to decide the motion."  *Id*.  The rule provides for return of property in possession of the government upon a proper showing, but it does not allow for damages for property no longer in its possession.  *See Ordonez v. United States*, 680 F.3d 1135, 1138-40 (9th Cir. 2012) (joining eight other circuits holding that sovereign immunity bars an award of damages where the property cannot be returned).

Where there are no pending criminal proceedings at the time a motion is filed under Rule 41(g), the motion is treated as a civil complaint governed by the Federal Rules of Civil Procedure.  *United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008) (citing *United States v. Ritchie*, 342 F.3d 903, 906-07 (9th Cir. 2003)).  If a court cannot decide the matter on the pleadings, then it should first convert the government's opposition into a summary judgment, then determine whether the government had met the Rule 56(c) standard, and, if not, then "go forward with additional proceedings consistent with the Federal Rules of Civil Procedure."  *Id.* at 1008 (citing *Taylor v. United States*, 484 F.3d 385, 387-88; 389-990) (5th Cir. 2007)).  "In ruling on the [Rule

41(e)] motion, the court must take into account all equitable considerations." *United States v. Martinson*, 809 F.2d 1364, 1366-67 (9th Cir. 1987) (citations omitted).

When a trial is complete, "[t]he person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property." *Id*. at 1367. *See also United States v. Kriesel*, 720 F.3d 1137, 1144 (9th Cir. 2013) (". . . Rule 41(g) motion should presumptively be granted if the government 'no longer needs the property for evidence.'") (citation omitted). "A district court has both the jurisdiction and the duty to return the contested property 'once the government's need for it has ended.'" *Martinson*, at 1370 (citations omitted). Although the presumption is in a defendant's favor after a criminal proceeding is over, the government can rebut that presumption by showing that it has a "legitimate reason" for retaining the property and that retention of the property is reasonable taking into consideration all of the circumstances. *United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014) (citations omitted). The government easily meets its burden by demonstrating that the property sought to be returned is subject to forfeiture. *Id*. (citing *Martinson*, 809 F.2d at 1369; *United States v. Fitzen*, 80 F.3d 387, 389 (9th Cir. 1996)).

## DISCUSSION

Sperow seeks only the return of "the non-forfeited and non-contraband property" being held by the Government in connection with the Oregon case and the Idaho case. *Motion* at 1. The Court notes at the outset that any challenge to the legality of the various searches and seizures will not be considered. Rule 41(g) is not a vehicle for such

**MEMORANDUM DECISION AND ORDER - 8**

challenges, and a plea of guilty waives any pre-plea constitutional issues. *See Martinson*, 809 F.2d at 1369 (the legality of the search is no longer an issue). *See also Stevens v. United States*, 530 F. 3d 502, 506 (7th Cir. 2008) (defendant may not use Rule 41(g) to challenge his conviction); *United States v. Penry*, 2013 WL 2378577 at *4 (10th Cir. 2013) (finding no legal precedent stating that a defendant can collaterally challenge the circumstances surrounding a search and seizure through a post-conviction Rule 41(g) motion).

As mentioned above, the Government submitted its Response while the § 2255 Motion was still pending on appeal at the Ninth Circuit. Although it is questionable whether the pendency of a § 2255 motion meets the criteria that a criminal proceeding is "still pending," the Supreme Court's denial of Sperow's petition for a writ of certiorari leaves no doubt that his conviction is now final and his case is not pending. Thus, Sperow is entitled to the return of any property being held solely to prove the drug or money laundering. On the other hand, it is clear that property subject to forfeiture or needed for forfeiture related issues is not to be returned. Likewise, the District of Idaho cannot be required to return any property not in its possession or control.

Referring to Sperow's Inventory, paragraphs 2, 3, 6, 8, 9, 10, and 12, the Government argues that "[m]any of these categories include direct evidence of Sperow's use of third-party nominees to conceal his criminal drug and money-laundering proceeds, and to put his property out of reach of the federal government, including the use of his construction business, and evidence of his contacts with others during the time of his hiding out from law enforcement." *Response* at 5-6.

**MEMORANDUM DECISION AND ORDER - 9**

The Government's Response relies primarily on the Declaration of Gregory E. Gleason, the primary case agent in the Idaho investigation that culminated in the indictment of Sperow and his co-Defendants in the District of Idaho. *Gleason Decl.* ¶ 4 (Dkt. 1210-1).  Agent Gleason was extensively involved in the investigation of the conspiracy and throughout trial and post-trial proceedings as well as the numerous forfeiture actions to date initially as a Special Agent of the IRS-CI and subsequently as a government contractor.  *See generally Gleason Decl.* ¶¶ 5-10.  He reviewed all of the seized evidence currently in the custody of either the Criminal Division of the IRS or the USAO for the District of Idaho. *Id.* at ¶ 11.

It is important to note that none of the property Sperow seeks was seized in Idaho or under the control of Idaho agents.  Although challenged by Sperow, the Court also notes that the Gleason Declaration is, in fact, signed. *See District of Idaho Civil Rule* 5.1(j); *see also* Electronic Case Filing Procedures 2.F (" . . . an electronic document is deemed signed when filed by an attorney, trustee, judicial officer, deputy clerk or other person authorized by the Court, using a valid CM/ECF login and password.").  Accordingly, Sperow's request to strike the Gleason Declaration is denied.

The Court will address each paragraph of Sperow's Inventory below:

**ITEMS CONTAINED IN THE CAB OF SPEROW'S FORD F-250 TRUCK OR IN THE CROSS-CAB TOOLBOX AT THE TIME OF HIS ARREST AND THE SEIZURE OF HIS TRUCK:**

**1.     Olympus SLR Camera, camera bag with extra lenses (telephoto, wide angle, and fisheye lenses).**

The only items that the District of Idaho has in its possession according to Agent Gleason are an Olympus IS-3 CLX camera, an attached 35-180 mm zoom lens, and an unattached super wide angle Macro lens all of which are stored in a black Tamrac bag. The District of Idaho will return those items given that they have limited evidentiary value.  It appears that Sperow was claiming that three lenses were seized.  The District of Idaho has only two.  It is only required to return what it has in its possession.

The Court notes that Sperow previously provided the name and address of the person to whom he wanted the requested property returned.  Given the length of time since his motion was filed, Sperow shall contact the U.S. Attorney's office in Boise directly either confirming that name and address or providing a different person and address for return of the property.

**2.     Green fanny pack and contents – two cell phones, pager, personal telephone address book, driver's license and credit cards.**

The District of Idaho has in its possession three Nokia cell phones and two chargers, more than one address book and/or photocopies of address books, photocopies of credit cards, and a photocopy of an expired United States passport.  The latter item was not requested by Sperow.  The District of Idaho claims that these have potential evidentiary value.

**3.     Blue Canvas and leather backpack and contents – New Tech Construction time sheets, $2,000.00 cash, miscellaneous invoices and two job estimates.**

a.     Backpack – the District of Idaho has never had any type of backpack in its possession.

**MEMORANDUM DECISION AND ORDER - 11**

b.      $2,000 cash – The District of Idaho claims that it has never had any currency seized in 2004 during the searches and seizures and the arrest of Sperow in 2004.  Accordingly, it cannot return the cash.  In any event, the cash, if available, would be subject to forfeiture.

c.      New Tech Construction time sheets – Agent Gleason's Declaration does not address this item.  The Government shall clarify whether it has those items.

d.      Miscellaneous invoices and two job estimates – Agent Gleason found documents (although not in a backpack) that could be considered invoices and possibly job estimates but stated that they have evidentiary value.

**4.      4" Pocket Knife with Multiple Blades and Tools**

Agent Gleason states that the District of Idaho has never had possession of this item.  Sperow has not offered any evidence to the contrary.  Accordingly, Sperow's request for return of this item is denied.

**5.      Cross-cab Toolbox Contents**

Sperow lists numerous tools that he claims were in the toolbox at the time his truck was seized.  Not only did no one from the District of Idaho participate in any of the searches, seizures, and arrests in this case, Agent Gleason states that these items were never in the possession of the District of Idaho.  *Gleason Decl.*, ¶ 12(5), Dkt. 1210-1 at 8. Despite the fact that the District of Idaho is not in possession of the tools, he made an effort to determine their location after reviewing Sperow's motion.

According to Agent Gleason, he interviewed two individuals close to Sperow at the time of Sperow's arrest in 2004 identified as SD and BB.  *Id.* at 8-9.  In preparing his

Declaration, Agent Gleason again contacted SD who advised that BB took possession of the truck with all the tools in the cross-cab and other tools that Sperow left at a jobsite. *Id.*  SD further stated that he was aware that BB continued to use the truck and tools for some time after Sperow's arrest in part because BB had taken over management of the construction project.

Agent Gleason also contacted the Drug Enforcement Agency ("DEA") and United States Marshal Service ("USM") whose agents confirmed that to the best of their knowledge the truck and its contents were not seized by any law enforcement entity.

Agent Gleason had interviewed BB in August of 2009. *Id.* at 9. At that time, BB confirmed that he had taken over the project and that he believed that SD had taken most of the tools left at the jobsite. *Id.*  Whether they are the same tools that were in the cross cab is unclear to Agent Gleason.  *Id.*

Finally, Agent Gleason states in his Declaration that he reviewed the transcripts of telephone conversations in which Sperow engaged from FCI Terminal Island after his 2005 Portland conviction.  Two of those conversations were with BB in May and June of 2006 discussing Sperow's tools and arrangements Sperow made with his attorney to store the tools and other things.  *Id.* at 9-10.

With his Reply, Sperow submitted a Declaration of Bruce Allen Borjesson (Dkt. 1219-1).  The Court is uncertain whether this individual is the same as the BB referred to by Agent Gleason although it appears likely.  Mr. Borjesson states that at the time of Sperow's arrest, there were numerous personal work tools located in the cross cab toolbox; that the tools listed in Sperow's Declaration were consistent with the types of

**MEMORANDUM DECISION AND ORDER - 13**

tools located in the cross-cab and frequently used by his employees; that he saw one of Sperow's employees retrieve from the cross-cab toolbox on May 25, 2004; that he was contacted by someone on May 26, 2004 who advised that Sperow had been arrested and asked Borjesson to secure the jobsite; that upon arriving at the jobsite, the foreman told him that the truck had been returned but the toolbox was empty; and that several days later, he took over the supervision of the construction project through completion.

While Sperow contends that the Court must hold an evidentiary hearing because it is faced with conflicting affidavits, the Court disagrees. What the affidavits show at most is a dispute as to whether the tools were returned with the truck, and, if so, who took possession of them. To some degree, it appears that BB and SD are pointing fingers at each other. However, that is irrelevant. The District of Idaho can only be required to return what is in its possession. Borjesson's Declaration does nothing to refute Agent Gleason's claim that the tools were never in the possession of the District of Idaho. Sperow does not deny the conversations in which he and BB discussed arrangements for storing the tools. Accordingly, Sperow's motion regarding the return of the cross-cab tools is denied.

**6.    All Papers and File Folders Found Within the Cab of the Truck**

Agent Gleason has located no documents noted as specifically found in the truck, but the documents he has found and commented on above appear to be similar to what Sperow is seeking. He claims that they have evidentiary value.

**CONTENTS/INVENTORY SEIZED FROM SPEROW'S APARTMENT AT THE HILLSIDE INN IN LAFAYETTE, CALIFORNIA, AT THE TIME OF HIS ARREST:**

**MEMORANDUM DECISION AND ORDER - 14**

**7.      Eighty (80) Gold Coins (48 Krugerrands and 32 Maple Leafs)**

Agent Gleason states that the District of Idaho has never had any gold coins in its possession.  However, he researched the issue of the coins and determined that only nineteen (19) coins had been seized and that they had been returned to Sperow's attorney Doran Weinberg.  The return was verified in the federal Consolidated Asset Tracking System.

Again, the District of Idaho is only required to return what is in its possession. Because the coins were never in its possession, Sperow's motion as to the coins must fail.

**8.      $200,000 in Uncashed Checks Made Payable to New Tech Construction Company by Dennis Carlson**

Agent Gleason located three checks dated two years before Sperow's arrest totaling $50,000 payable to New Tech Construction and signed by Dennis Carlson.  He claims the checks had no value at the time of Sperow's arrest and that, in any event, they have evidentiary value and thus cannot be returned.

**9.      All Photographs Seized During the Search of Sperow's Apartment at the Hillside Inn in Lafayette, California**

Agent Gleason found some photographs, but he does not know whether all of the photographs seized from Sperow's apartment are currently in the possession of the District of Idaho.  Further, he claims that they have evidentiary value.

Whether or not the photographs are all of those seized is irrelevant.  The District of Idaho is only required to return items in its possession.

**MEMORANDUM DECISION AND ORDER - 15**

**10.    All Personal Papers and Business Files Including Business Ledgers, Invoices, Profit and Loss Statements, Tax Returns**

Agent Gleason states that the majority of the evidence currently in possession of the District of Idaho consists of documents that would fit into this category but that they cannot be returned due to their evidentiary value.

**MISCELLANEOUS:**

**11.    All Personal and Business Records Seized from the Search of 101 Carroll Way located in Aptos, California**

Agent Gleason states that he knows from his investigation this address is the residence of Sperow's parents.  Sperow does not contend otherwise in his Reply.  The Government contends that Sperow does not have standing to request items to be returned from his parents' residence and further that the items have evidentiary value and cannot be returned until his criminal and post-conviction relief cases are concluded.

**ITEMS SEIZED FROM MAXAIR AVIATION:**

**12.    Computer and Business Records Seized from MAXAIR AVIATION in Van Nuys, California, Including All Banking Records, Aviation Records, and Customer Lists**

Agent Gleason states that MaxAir was a business located at the Van Nuys Airport Sperow purchased using his alias, Greg Westbrook, during his fugitive years.  The District of Idaho forfeited Sperow's interest in MaxAir in 2011 (Dkt. 1151).  The District of Idaho is in possession of a Packard Bell CPU, Model A940 (serial # 5731222200),

**MEMORANDUM DECISION AND ORDER - 16**

keyboard, mouse, and documents seized from MaxAir in 2004.  The Government claims they have evidentiary value and cannot be returned.

**13.    Contents of 1995 Chevrolet Tahoe Including Maui Jim Sunglasses Located Within the Vehicle**

Agent Gleason states that the vehicle was seized at the time of Sperow's arrest in 2004 and subsequently sold with the proceeds being forfeited (Dkt. 1131).  He found no indication that the District of Idaho has ever been in possession of the Maui Jim sunglasses or other items taken from the vehicle.  He has contacted the DEA and USM agents in California and was unable to find any documentation that these or any items were taken from the vehicle at the time it was seized.

**CONTENTS/INVENTORY SEIZED FROM CESSNA U206, REGISTRATION NUMBER N2132F HANGARED AT BUCHANAN FIELD IN CONCORD, CALIFORNIA:**

**14.    Flight Bag and Pilot's Log Book**

Agent Gleason states that the aircraft was seized in 2004 and subsequently sold for $61,760.92, which amount was forfeited (Dkt. 1131).  He opines that the log book was likely sold with the aircraft since the log book for the Cessna 182 was sent to the USMS to be sold with that aircraft.  He did not find any evidence that a flight bag was ever sent to the District of Idaho or seized by the DEA or USM in California.

**15.    Two (2) Pair of Dave Clark Headsets**

Agent Gleason has been unable to find the headsets among the evidence currently in possession of the District of Idaho and thus concludes that they were never sent to the District of Idaho.  He reviewed reports and inventory relating to the 2004 search warrants

**MEMORANDUM DECISION AND ORDER - 17**

of Sperow controlled locations and Sperow's arrest and did not find these items listed.

Nor did his contacts with the DEA and USMS in California reveal that any items were

taken from the aircraft at the time it was seized.  Agent Gleason raises the possibility that

the headsets were sold with the aircraft because, in mid-2008, one of the forfeiture

paralegals learned that the headsets in the Cessna 206 were sold with that aircraft because

those involved with the sale said that aircraft headsets are usually sold with the plane

along with the logbook.

**16.    Two (2) Pair of Litesped Headsets**

According to Agent Gleason, theses headsets were contained in the Cessna U206

and sold with the aircraft as stated in response to the item above.

**17.    North Face Down Sleeping Bag**

Agent Gleason states that the sleeping bag is not in the possession of the District

of Idaho and that he can find no record that it was ever seized pursuant to the 2004 search

warrants.

**18.    Maui Jim Sunglasses**

Agent Gleason states that the sunglasses are not in the possession of the District of

Idaho and that he can find no record that they were ever seized pursuant to the 2004

search warrants.

**CONTENTS/INVENTORY CONTAINED IN SEIZED AIRCRAFT (CESSNA 182)
HANGARED AT THE VAN NUYS AIRPORT:**

**19.    KX 170B Nav/Com Radio**

**MEMORANDUM DECISION AND ORDER - 18**

Agent Gleason states that the District of Idaho does not possess this radio and that he can find no record that it was ever taken or that any items were taken from that aircraft at the time that aircraft was seized.  He surmises that the radio was likely sold with the aircraft.

**20.    One (1) Tool Bag with Assorted Tools**

Agent Gleason states that the District of Idaho does not possess the tool bag with assorted tools and can find no record that it was ever taken from the aircraft at the time it was seized.

**21.    Portable Intercom and Dave Clark Headset**

Agent Gleason states that these items are not in the possession of the District of Idaho, do not appear to have been taken from the aircraft, and were likely sold with the aircraft.

**22.    Handheld VHF Receiver**

Agent Gleason states that his response is the same as to (21) above.

## CONCLUSION

As stated above, the Government is only required to return property in its possession or control that it has no legitimate reason to retain now that the conviction is final.  Although forfeiture is a legitimate reason for retention, it is unclear to the Court which items or documents the Government claims have evidentiary value solely for forfeiture purposes.  Given that the conviction is now final, the Government has no legitimate reason to retain property or documents needed only for retrial purposes had Sperow been successful in setting aside his conviction.  Accordingly, the Court will

**MEMORANDUM DECISION AND ORDER - 19**

withhold decision on several categories of property pending receipt of a supplemental response from the Government.

## ORDER

**IT IS ORDERED that** Sperow's Motion for Return of Property Pursuant to 41(g) (Dkt. 1207) is **GRANTED IN PART and DENIED IN PART** as provided below.

1.     The Motion is **GRANTED** as to the items claimed in Paragraph 1 of Sperow's Inventory. The Government shall return to Sperow the Olympus IS-3 CLX camera, attached 35-180 mm zoom lens, and the unattached super wide angle Macro lens together with the black Tamrac bag in which they are presently contained.  Said property shall be returned to Sperow within twenty-one (21) days after Sperow provides the Government with confirmation as directed above of the individual to whom the property should be sent together with that individual's current address.

2.     The Motion is **DENIED** as to all items listed in Sperow's Inventory which the Government claims it has never had and does not now have in its possession: Paragraph 1 (third camera lens); Paragraph 3 (blue canvas and leather backpack and $2,000); Paragraph 4 (4" pocket knife); Paragraph 5 (cross-cab toolbox contents); Paragraph 7 (eighty (80) gold coins); Paragraph 13 (contents of the 1995 Chevrolet Tahoe); Paragraph 14 (flight bag and pilot's log book from Cessna U206); Paragraph 15 (two (2) pair of Dave Clark headsets from Cessna U206); Paragraph 16 (two (2) pair of Litesped headsets from Cessna U206); Paragraph 17 (North Face down sleeping bag from Cessna U206); Paragraph 18 (Maui Jim sunglasses from Cessna U206); Paragraph 19 (KX 170B Nav/Com Radio from Cessna 182); Paragraph 20 (tool bag with assorted tools

**MEMORANDUM DECISION AND ORDER - 20**

from Cessna 182); Paragraph 21 (portable intercom and Dave Clark headset from Cessna 182); and Paragraph 22 (handheld VHF receiver from Cessna 182).

3.     The Government shall have ten (10) days from the date of this Order to file a supplemental response (a) identifying any items in Paragraphs 2, 3, 6, 8, 9, 10, 11, and 12 of Sperow's Inventory to which it asserts a continued evidentiary need for locating proceeds for forfeiture purposes, and (b) providing the specific basis for each such assertion.  Any items which the Government no longer claims have an evidentiary value shall be returned to Sperow within twenty-one (21) days after Sperow provides the Government with confirmation as directed above of the individual to whom the property should be sent together with that individual's current address.

DATED: March 20, 2017

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 21**